[No. S037475. Oct. 31, 1994.]

G. DENNIS ADAMS, a Judge of the Superior Court, Petitioner, v. COMMISSION ON JUDICIAL PERFORMANCE,[1] Respondent.

[1]The petition in this matter originally was filed under the caption "Inquiry Concerning a Judge, No. 104." We have changed the caption to reflect that the matter is a mandate proceeding against the Commission of Judicial Performance, and we have substituted the name of the petitioner, because the information reflecting the petitioner's identity has been unsealed.

This proceeding involves a challenge to a ruling by the Commission on Judicial Performance, ordering that a disciplinary hearing before the commission be open to the public. While this proceeding was pending before the Court of Appeal, the commission decided to proceed with a closed disciplinary hearing, and, after holding such a closed hearing, the commission filed a recommendation with this court proposing a disciplinary sanction againt petitioner. (See, *post*, p. 640, fn. 8.) Petitioner has filed a separate petition challenging the proposed sanction. (*Adams* v. *Commission on Judicial Performance* (S042149).) The present decision is concerned solely with the validity of the commission's order opening to the public the disciplinary hearing before the commission.

634

COUNSEL

Lewis, D'Amato, Brisbois & Bisgaard, Douglas R. Reynolds, James E. Friedhofer, Susan E. Leonard, Wingert, Grebing, Anello & Brubaker and Charles R. Grebing for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Laura Whitcomb Halgren, Deputy Attorneys General, for Respondent.

OPINION

GEORGE, J.—An impartial and independent judiciary is indispensable to our legal system. Of equal importance is public confidence in the independence and integrity of the judiciary, because the effective functioning of our legal system is dependent upon the public's willingness to accept the judgments and rulings of the courts. (Cal. Code Jud. Conduct, com. to canon 1.)[2] As a consequence, California judges must act in accordance with high standards of conduct that foster the utmost trust of the public.

In 1960, as a means of attempting to meet the public's expectations with regard to a fair and impartial judiciary, and in order to enforce rigorous standards of judicial conduct, California established the first permanent state judicial disciplinary commission in the nation, the Commission on Judicial Performance (hereafter the Commission). (See Cal. Const., art. VI, § 8;[3] Shaman & Begue, *Silence Isn't Always Golden: Reassessing Confidentiality in the Judicial Disciplinary Process* (1985) 58 Temple L.Q. 755, 756 [hereafter *Silence Isn't Always Golden*].) An independent state agency, the Commission is authorized to investigate complaints of judicial misconduct and other conduct prejudicial to the administration of justice, to file formal charges, to hold adjudicative hearings and make findings, to order less serious discipline on its own authority, and to recommend the imposition of more serious discipline—including removal from office—by this court. (Art. VI, § 18.) In its 1993 Annual Report, the Commission recognized that "[t]he

---

[2]The California Code of Judicial Conduct, adapted from the American Bar Association Code of Judicial Conduct of 1972, was adopted by the California Conference of Judges (later renamed the California Judges Association) on September 10, 1974, effective January 5, 1975. In 1992, the California Judges Association adopted a revised California Code of Judicial Conduct. All further references to the Code of Judicial Conduct are to the 1992 California Code.

[3]All further references to articles and sections are to the California Constitution, unless otherwise indicated.

importance of providing a forum for complaints about judicial misconduct cannot be overestimated in terms of public confidence in the judiciary." (Com. on Jud. Performance, Ann. Rep. (1993) p. 4.)

Prior to November 1988, proceedings before the Commission relating to judicial performance remained confidential unless, and until, charges were filed with this court. Thus, public scrutiny of a judicial disciplinary proceeding occurred only when the Commission recommended serious discipline and the proceeding reached the final stage of review in this court.[4]

In November 1988, however, the voters of this state approved a legislative resolution pursuant to article XVIII, sections 1, 4—designated on the ballot as Proposition 92—that amended the provisions of the California Constitution relating to the judicial disciplinary process. Based upon the determination that, under appropriate circumstances, public scrutiny of the initial stages of a judicial disciplinary proceeding before the Commission is necessary and warranted in order to maintain public confidence in the judiciary, the constitutional amendment authorized the Commission to open its hearings to the public "in the event charges involve moral turpitude, dishonesty, or corruption . . . ." (Art. VI, § 18, subd. (f)(3).)

The present proceeding arises from the Commission's exercise of its authority to open a judicial disciplinary hearing to the public pursuant to the 1988 constitutional amendment. On December 10, 1992, following an extensive preliminary investigation (Cal. Rules of Court, rule 904.2)[5] that generated substantial publicity in the local media as well as in legal journals,[6] the Commission filed a notice of formal proceedings, charging Judge G. Dennis Adams of the San Diego County Superior Court (hereafter petitioner) with willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. (Art. VI, § 18, subd. (c).) Petitioner filed an answer denying the charges. On May 10, 1993, the Commission filed an amended notice of formal proceedings, and the judge answered, again denying the charges. Thereafter, the Commission concluded

---

[4]Most other states adopted a similar system of limited public scrutiny. "From the beginning of the modern stage of judicial discipline, there has been widespread belief that the records and proceedings of judicial conduct organizations should be kept confidential, at least until a conduct organization files formal charges of misconduct against a judge." (*Silence Isn't Always Golden, op. cit. supra*, 58 Temple L.Q. at p. 756.)

[5]All further references to rules are to the California Rules of Court.

[6]Articles relating to the Commission investigation were published in numerous newspapers and legal journals, including the April 2, 1992, edition of the San Diego Reader, the April 4, 8, and 10, June 3 and 7, and October 20, 1992, editions of the San Diego Union-Tribune, the April 10, 11, and 19, June 2, and October 20, 1992, editions of the Los Angeles Times, the April 10, June 3, and October 20, 1992, editions of the San Diego Daily Journal, and the October 1992 edition of the California Lawyer.

that counts 1 and 2 of the formal charges involved moral turpitude and corruption and that count 4 of the formal charges involved moral turpitude, corruption, and dishonesty, and that opening to the public the hearing on the charges would serve to maintain public confidence in the judiciary and would further the interests of justice. (Art. VI, § 18, subd. (f)(3); rule 907.2 (c).) On these grounds, the Commission determined to open the hearing, notified the parties of its decision, and scheduled a press release.

In response, petitioner filed in this court, in the first instance, a petition for writ of mandate (or other appropriate relief), seeking to stay issuance of the press release and to maintain the confidentiality of the proceedings before the Commission. In his petition, he challenged, among other matters, the determination of the Commission that several of the charges alleged against him involved moral turpitude, dishonesty, or corruption. On August 12, 1993, we transferred the matter to the Court of Appeal, Fourth Appellate District, and ordered that the Commission maintain the confidentiality of the proceedings, and that the record remain sealed, during the pendency of the proceedings in the Court of Appeal.[7]

In August 1993, the Court of Appeal issued an order to show cause, subsequently filing an unpublished, confidential opinion, in which the court, in a two-to-one decision, granted in part and denied in part the relief sought by petitioner. The majority in the Court of Appeal construed the term "involve," in the context of the phrase "involve moral turpitude, dishonesty, or corruption" in article VI, section 18, subdivision (f)(3), to mean *necessarily* involve such behavior. The appellate court also concluded that if some, but not all, of the charges necessarily involved moral turpitude, dishonesty, or corruption, equal protection principles dictate that the Commission may open the hearing only on the charges that meet such criteria and must maintain the confidentiality of the proceedings relating to the charges that do not meet the criteria. Finally, the appellate court determined that certain charges alleged in counts 1 and 4 of the notice of formal proceedings necessarily involved moral turpitude, corruption, or dishonesty, but that the remaining charges did not meet that criteria, and that hearings on these other charges therefore should remain confidential.

Both petitioner and the Commission sought review of the decision of the Court of Appeal, challenging in a variety of respects the conclusions reached

---

[7]On August 20, 1993, the Commission filed a second amended notice of formal proceedings, which contained new charges. The Commission determined that the amendments comprised additional instances of the same type of misconduct that was the subject of the first amended notice, and that the filing of the new charges did not alter the Commission's earlier determination that the criteria for an open hearing had been satisfied. In the briefing it filed with this court, the Commission indicates that, subsequently, additional amendments to the formal charges have been filed.

by the Court of Appeal. We granted the petitions for review filed by both parties.[8]

Petitioner contends that: (1) article VI, section 18, subdivision (f)(3), and rule 907.2(c), which authorize the Commission to open to the public a hearing on charges relating to judicial performance if certain criteria are met, violate the doctrines of separation of powers under article III, section 3, and judicial powers under article VI, section 1; (2) the adoption of article VI, section 18, subdivision (f)(3), in Proposition 92, did not repeal or vitiate section 18, subdivision (h) (former subd. (f)), which assertedly mandates confidentiality of hearings on judicial performance; (3) in determining whether to open to the public the hearing on charges relating to judicial performance, the Commission must consider not only the formal written charges, but also the evidence supporting the defenses asserted by a judge in response to the charges; (4) the distinction drawn under section 18, subdivision (f)(3), between judges facing charges involving moral turpitude, dishonesty, or corruption, and judges charged with misconduct that does not fall within that category, violates constitutional guarantees of equal protection of the laws; (5) rule 907.2(c), permitting an open hearing on *all* the charges of judicial misconduct if *any* of the charges meet the constitutional criteria, violates equal protection guarantees, and therefore should be declared void; and (6) none of the charges filed against petitioner involved moral turpitude, dishonesty, or corruption.

The Commission, in turn, contends that: (1) charges of misconduct that "involve moral turpitude, dishonesty, or corruption," under article VI, section 18, subdivision (f)(3), should be construed to signify charges that *may* prove to involve, rather than "necessarily" involve, moral turpitude, dishonesty, or corruption; (2) when a judge is charged with numerous acts of judicial misconduct, some (but not all) of which involve moral turpitude, dishonesty, or corruption, article VI, section 18, subdivision (f)(3), as implemented by rule 907.2(c), properly permits an open hearing on *all* the

[8]Prior to the filing of the Court of Appeal's decision, the Commission, on October 25, 1993, commenced a confidential evidentiary hearing on the charges before the three special masters appointed by this court. (Rule 908.) The hearing concluded on April 6, 1994. On April 25, 1994, pursuant to rule 912(a), the special masters transmitted to the Commission their proposed report, together with findings of fact and conclusions of law. On September 13, 1994, the Commission filed with this court its findings of fact, conclusions of law, and recommendation. After the commission filed its recommendation with this court, we ordered that the record in the present proceeding be unsealed.

By separate motion, petitioner requests that this court take judicial notice pursuant to Evidence Code section 459 of the proposed report of the special masters. We decline to do so, concluding that this report is irrelevant to the issues involved in the present proceeding, relating to the Commission's determination, reached prior to the commencement of the hearing, to open the hearing on the charges.

charges; and (3) the Commission properly determined that counts 1 and 2 of the formal charges involved moral turpitude and corruption, and that count 4 of the formal charges involved moral turpitude, dishonesty, and corruption.

After reviewing the substance of the charges against petitioner, we shall turn to the numerous legal issues raised by the parties.

I

A. *The charges.*

The amended notice of formal proceedings (hereafter sometimes referred to as the notice) charged petitioner with willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute, within the meaning of article VI, section 18, subdivision (c), based upon the following allegations:

*Count 1*: Petitioner received substantial financial benefits in the form of discounts and favorable prices for the purchase of automobiles and repairs from James Williams, who owned a car dealership, and who was a litigant in favor of whom the judge previously had awarded a substantial monetary judgment. In doing so, petitioner failed to conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Specifically, the notice alleged that, in 1986, petitioner presided over a court trial in litigation entitled Security Pacific National Bank v. Williams, and a related cross-action, and entered a $5 million judgment in favor of Williams, reserving jurisdiction to determine attorney fees and costs on appeal. Williams's counsel in that litigation was Patrick Frega. While the case was pending on appeal, petitioner contacted Williams regarding the purchase of a Mercedes automobile. In March 1989, Williams sold a used Mercedes to petitioner, personally handling the transaction. He set the sales price at $20,537, which, according to the notice, "appeared to be favorable" to petitioner.

The judgment in the Security Pacific litigation was affirmed on appeal, and on January 9, 1990, the remittitur issued. The notice alleged that "[i]n or about early 1990," petitioner again contacted Williams and asked the car dealer to locate a used automobile for his daughter. In March 1990, Williams sold and delivered a 1988 Jeep to petitioner, setting the sales price at $13,500, which "appeared to be favorable" to petitioner. The total sales price, including taxes and other charges, was $14,796.74. At the time of the purchase, the only consideration paid by petitioner for the Jeep was the

trade-in of a 1983 Oldsmobile, having a value of $800. On April 16, 1990, petitioner caused to be issued to Williams's dealership a cashier's check in the amount of $5,000 as further payment for the Jeep. On or about June 4, 1990, "Patrick R. Frega, counselor at law, a professional corporation," issued to Williams a check for $9,796.74, a sum equal to the total sales price of $14,796.74, less the $5,000 Williams had received from petitioner on April 16. The check bore a notation to the title and docket number of the Security Pacific litigation (the case in which petitioner had awarded Williams a $5 million judgment). On June 7, 1990, petitioner wrote a check, payable to Frega personally, for $5,672.40. The check bore a notation indicating it was a "pay-off" on his daughter's vehicle.

In November and December 1991, Williams's dealership performed substantial repairs on the Jeep. After giving petitioner a 10 percent discount for parts and labor, Williams billed him for the amount of $8,500. On December 9, 1991, petitioner paid Williams the sum of $7,000 on this bill. On the same day, "Patrick R. Frega, counselor at law, a professional corporation" paid to Williams's dealership $1,500 as the balance owing on the bill.

In December 1990, the same year Williams received satisfaction of his $5 million judgment, Williams gave petitioner a gift of a sweater. Pursuant to Government Code section 87207, which requires judges to report gifts they have received having a value of $50 or more, petitioner reported the gift of the sweater, valuing it at $150.

*Count 2*: Petitioner received gifts from attorneys whose interests had or were likely to come before the judge. In proceedings involving these attorneys, petitioner failed to disqualify himself or make full disclosure on the record of his relationship with these attorneys or their firms, or obtain a written waiver of disqualification. In doing so, he failed to conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary. This conduct was manifested by the following specific incidents:

i. Beginning in July 1987, through 1991, petitioner began to collaborate with Frega in the writing of a novel. During this period, petitioner reported accepting a loan from Frega of a laptop computer, valuing the loan at $1,300. On July 2, 1987, Frega took petitioner and petitioner's wife to dinner to celebrate Frega's award from the San Diego Trial Lawyers Association as "trial lawyer of the year," which was based upon the successful outcome in the Security Pacific v. Williams litigation. Petitioner reported the value of the dinner at $100.

ii. On or about June 4, 1990, Frega paid to Williams the sum of $9,796.74 toward the purchase of petitioner's daughter's Jeep. Of this sum, at least $4,124.34 constituted Frega's contribution for the purchase of the Jeep.

iii. Frega or members of his firm have appeared before petitioner in several cases since July 2, 1987.

iv. In 1985, petitioner was represented in a legal matter by members of the then-named law firm of Ault, Midlam, & Deuprey. In December 1986, petitioner accepted from that firm a legal fee "write-off" of $600. Since December 1986, members of that firm and its successors have appeared before petitioner in numerous cases.[9]

v. In October 1989, petitioner accepted the use of Attorney Michael Duckor's desert condominium for a weekend. In the Summer of 1989 or 1990, petitioner was a guest of Duckor's law firm, Duckor & Spradling, on a day fishing trip. Since 1989, members of Duckor & Spradling have appeared before petitioner in several cases, and petitioner has appointed Duckor regularly as a special master.

*Count 3*: Petitioner provided legal advice to Frega and members of his firm on cases being handled by that firm. In doing so, petitioner failed to conduct himself in a manner that promotes public confidence in the integrity and impartiality of the judiciary. The notice charged the following incidents:

i. In 1988 or 1989, petitioner assisted Frega's associate, George Manning, in preparing a settlement conference brief for a case pending in the San Diego County Superior Court. In early 1989, petitioner assisted Manning in preparing a settlement conference brief in another case.

ii. In the spring of 1989, petitioner met with Frega to discuss a case pending in the San Diego County Superior Court in which Frega represented the plaintiff. Petitioner provided Frega with advice, recommending that he file a *"Tarasoff* motion" *(Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) The Frega firm subsequently filed such a motion.

iii. Petitioner communicated with Frega regarding litigation pending in Los Angeles County Superior Court, providing Frega with petitioner's opinion regarding a special verdict.

*Count 4*: In response to inquiries by the Commission regarding complaints of misconduct, petitioner made material omissions and misrepresentations

---

[9]In his answer filed in response to the notice of formal proceedings, petitioner submitted documentation indicating, in certain cases involving the appearance of members of the law firm of Ault, Midlam, & Deuprey, as well as the law firm of Duckor & Spradling (see subpt. v., *post*), before petitioner, that petitioner had made full disclosure to opposing counsel of the nature of his relationship with these firms.

and demonstrated a lack of candor. He thereby failed to conduct himself in a manner that promotes public confidence in the integrity of the judiciary. Count 4 charged the following incidents:

i. In the course of its investigation, the Commission inquired of petitioner regarding the gift (which the judge had declared) of the $150 sweater received from Williams (discussed, *ante*), asking him to comment and supply information "regarding any appearances before [petitioner] by any of the donors [of gifts], or any attorney or entity associated with a donor, since January 1, 1985." Petitioner was directed to "[p]lease describe any appearance by a donor or associate and indicate whether you have taken any legal action affecting a donor or associate, or whether you have recused yourself from a case involving a donor or associate." Petitioner responded by letter that the sweater "was a Christmas gift from Williams who is a personal friend and has no business before me." Petitioner failed to disclose that Williams had been a litigant who had appeared before the judge in 1985 and 1986, and in favor of whom the judge had awarded a $5 million judgment.

ii. The Commission inquired regarding any gifts received by petitioner from any donor listed in a previous letter of the Commission, dated October 18, 1991, which had identified both Frega and Williams as donors. In response, petitioner asserted, "I received no gifts requiring disclosure and nothing from any of the donors listed in the letter of October 18." Petitioner failed to disclose the discount given by Williams's dealership for the repairs to the judge's daughter's Jeep or the $1500 payment made by Frega for those repairs.

iii. In a letter to the Commission, petitioner's attorney represented that "[a] separate check was written by Judge Adams in the amount of $5,672.40 to the dealership." This statement was false. The check was payable to Frega.

iv. The Commission inquired regarding petitioner's declaration of a gift of legal services by the law firm of Ault, Midlam, & Deuprey, requesting information regarding any appearances by that law firm in cases before petitioner. The judge responded: "Because of our friendship, Tom Ault has never appeared in front of me." He failed to disclose that members of the law firm had appeared before the judge on several occasions since January 1, 1985.

v. The Commission inquired regarding declared gifts from Frega, requesting information regarding any appearances by Frega or other members of Frega's law firm in cases before petitioner. Adams responded that "Pat Frega

does not appear in front of me and I will not hear one of his cases." He also stated, "I will not hear a Frega case." In a follow-up letter, the Commission inquired whether Frega had appeared before him before he had given the gifts to petitioner. Petitioner falsely responded that "Mr. Frega last appeared before me in 1984." Petitioner failed to identify numerous cases involving Frega or his firm that had come before petitioner since 1984, including the Security Pacific litigation.

vi. The Commission inquired regarding petitioner's declared stay at Duckor's desert condominium. Petitioner responded: "I recuse myself from all Duckor matters although the court uses him as a special master in cases involving construction defects." He failed to disclose that the Duckor & Spradling firm had appeared before him in three cases.

B. *Answer.*

Petitioner submitted a lengthy response, dated June 10, 1993, to the amended notice of formal proceedings, denying all charges and providing detailed information, with supporting documentation. He asserted, among other matters, that he paid fair market value when he purchased the Mercedes from Williams's dealership, and, prior to the Commission's investigation, had no knowledge regarding any payments made by Frega toward the purchase of the Jeep or the repairs. He also explained he had not heard a contested matter in a case handled by Frega since the Security Pacific litigation, which was decided in early 1986, and that, on any occasion when settlement negotiations in a construction-defect case handled by a Frega associate reached an impasse, requiring that contested issues be decided, petitioner recused himself.

C. *Order to open hearing.*

Prior to the filing of petitioner's answer to the amended notice of formal proceedings, the Commission made a preliminary decision to conduct an open hearing and invited written arguments on the question. (Rule 907.2(a).) After considering the written briefing, on June 25, 1993, the Commission issued an order to open the hearing. In its order, the Commission determined that counts 1 and 2 of the formal charges involved moral turpitude and corruption, and that count 4 involved moral turpitude, corruption, and dishonesty. The Commission further determined that a formal hearing open to the public would further both public confidence in the judiciary and the interests of justice, because: (1) the judge allegedly received substantial financial benefits not previously revealed to the public and to the litigants appearing before the judge; (2) there had been substantial interest and

concern expressed by the public, the litigants, and the judiciary in the conduct underlying the charges in these proceedings; and (3) the risk of further speculation and misinformation about the charges and the proceedings would continue if the hearing were closed to the public, thus "eroding public confidence in the judiciary and the process of judicial discipline."

Pursuant to its determination to open the hearing, the Commission authorized a press release containing a general description of the charges, stating that the judge denied the charges, and explaining the hearing procedure.

## II

Under the authority of article VI, section 18, the Commission may initiate and oversee proceedings for the censure, removal, retirement, or private admonishment of a judge. Rule 904 directs that an inquiry be made by the Commission staff into verified complaints of misconduct that are not obviously frivolous or unfounded, followed if appropriate by a preliminary investigation to determine whether formal proceedings are necessary. The Commission also is allowed to make such inquiry and investigation on its own motion without receipt of a verified complaint. If the Commission commences a preliminary investigation, the judge must be notified of that fact and afforded a reasonable opportunity to respond. (Rule 904.2(a).) If, following the preliminary investigation, the Commission concludes that formal proceedings should be instituted to inquire into the charges, the Commission must issue a written notice to the judge advising him or her of the decision to so proceed. (Rule 905(a).) The notice of formal proceedings must specify the charges against the judge and the alleged facts upon which the charges are based. (Rule 905(b).) The judge may file an answer to the notice of formal proceedings, and the notice and answer constitute the "pleadings." (Rule 906.) The Commission thereafter orders a hearing on the charges and may request that the California Supreme Court appoint special masters to hear and take evidence and report their findings and conclusions to the Commission. (Rule 907.)

Prior to the passage, at the November 1988 General Election, of the legislative proposal to amend the constitutional provision, former subdivision (f) of article VI, section 18, provided: "The Judicial Council shall make rules implementing this section and providing for confidentiality of proceedings." In *Mosk* v. *Superior Court* (1979) 25 Cal.3d 474 [159 Cal.Rptr. 494, 601 P.2d 1030], the court concluded that this former version of subdivision (f) mandated confidentiality of investigations and proceedings before the Commission, and that, accordingly, the Judicial Council did not have the authority to promulgate rules providing for investigations and hearings open

to the public. In reaching this conclusion, the court relied upon the language of former section 10b, paragraph (3), of article VI, as adopted by constitutional amendment in November 1960, which expressly provided for the confidentiality of all proceedings before the Commission, and concluded there was no indication "that the people of California intended to change the constitutional requirement of confidentiality by revision of article VI in 1966 . . . ." (25 Cal.3d at p. 499.)[10]

The constitutional provision interpreted in the *Mosk* decision remained unchanged until the November 1988 election. Prior to that election, the Senate resolved, with the Assembly concurring, to propose to the voters that article VI, sections 8 and 18, of the California Constitution, be amended to provide, inter alia, that, under some circumstances, hearings on judicial performance before the Commission could be opened to public scrutiny. (Sen. Const. Amend. No. 6, Stats. 1988 (1987-1988 Reg. Sess.) res. ch. 67, pp. 6115-6116.) The preamble to the legislative resolution proposing the constitutional amendment states: "WHEREAS, The Legislature finds and declares that maintaining public confidence in the integrity of the judicial system is essential to good government; and [¶] WHEREAS, The Commission on Judicial Performance bears a great public trust which it must currently fulfill in total secrecy; and [¶] WHEREAS, Because responsible public disclosure and accountability is proper, desirable, and consistent with the goal of public confidence, it is the intent of this measure that appropriate commission proceedings be open to public scrutiny, and that this measure be construed so as to accomplish this purpose which is hereby declared to be the public policy of this state . . . ." (*Id.*, at p. 6115.)

The constitutional amendment was submitted to the voters as Proposition 92 and was approved, effective November 9, 1988. The amendment included the addition of the current versions of article VI, section 18, subdivisions (f) and (g), and the relabeling of former subdivision (f) as subdivision (h). Section 18, subdivision (f), now provides that if, after conducting a preliminary investigation, the Commission by vote determines that formal proceedings should be instituted against a judge, the Commission "may in the pursuit of public confidence and the interests of justice, issue press statements or releases or, in the event charges involve moral turpitude, dishonesty, or corruption, open hearings to the public." (Art. VI, § 18, subd. (f)(3).)

The Judicial Council, pursuant to the delegation of authority under section 18, subdivision (h), promulgated rule 907.2, governing open hearings. Subdivision (a) of rule 907.2 provides that, in the event a judge against whom

---

[10]The 1966 revisions of article VI included the replacement of former sections 10a and 10b with section 18, former subdivision (f).

charges have been filed does not request an open hearing in accordance with the rules, "the commission shall determine whether the proceeding may meet the constitutional criteria for opening hearings to the public." In the event the Commission makes a preliminary determination that the proceeding may meet the constitutional criteria under section 18, subdivision (f)(3), it must allow the parties to submit written arguments on this issue. (Rule 907.2(a).) After considering the written arguments submitted, the Commission must determine whether any charge in the notice of formal proceedings involves moral turpitude, dishonesty, or corruption (hereafter sometimes referred to collectively as moral turpitude.) (Rule 907.2(b).) Having determined that one or more of the charges involve moral turpitude, the Commission must decide whether an open hearing "would be (1) in the pursuit of public confidence, and (2) in the interests of justice." (Rule 907.2(c).)[11] Upon making this determination, the Commission may order that the hearing be open.

### III

■ Petitioner initially contends that the open hearing provisions under article VI, section 18, subdivision (f)(3), as implemented by rule 907.2(c), violate the California Constitution's provisions for separation of powers under article III, section 3, and judicial powers under article VI, section 1, and that, accordingly, the open hearing procedure (established by the electorate's approval of the legislative resolution amending the Constitution) is void as an unconstitutional exercise of judicial power. Petitioner also maintains that rule 907.2(c) improperly authorizes the Commission to exercise judicial powers by granting the Commission unfettered discretion to determine whether the formal charges drafted by the Commission "involve moral turpitude, dishonesty, or corruption" and whether an open hearing on those charges would be in "the interests of justice" and "in the pursuit of public confidence." Petitioner argues that vesting such judicial powers in an administrative agency violates the separation of powers and judicial powers clauses, and the "principle of check" articulated by this court in *McHugh* v *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 366 [261 Cal.Rptr. 318, 777 P.2d 91].

Even if we assume, arguendo, that the Commission's exercise of the authority to issue a press release concerning a pending proceeding, and to

---

[11]Rule 907.2(c) provides in full: "If the commission finds that no charge in the notice of formal proceedings involves moral turpitude, dishonesty, or corruption, the commission shall order that the hearing remain confidential. [¶] If the commission finds that any charge in the notice of formal proceedings involves moral turpitude, dishonesty, or corruption, the commission shall proceed to a determination of whether opening the formal hearing would be (1) in the pursuit of public confidence, and (2) in the interests of justice. [¶] The commission shall not order that a formal hearing be open to the public unless the commission finds that opening the hearing would be both in the pursuit of public confidence and in the interests of justice."

open the Commission's hearing related to such a proceeding, are "judicial-like" functions, petitioner's claim has no merit. Article III, section 3, provides: "The powers of State government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others *except as permitted by this Constitution*." (Italics added.) The Commission itself was created by constitutional amendment (art. VI, § 8), and the Commission's authority to order that a hearing be open now is established by our Constitution in article VI, section 18, subdivision (f), adopted by amendment in 1988. Thus, the Commission was created to act as a constitutionally independent body. In jurisdictions where public access to information relating to investigation of judicial misconduct is not authorized by the state Constitution, the power of the Legislature or the public to obtain such information may be limited by confidentiality provisions. (See *Silence Isn't Always Golden, op. cit. supra*, 58 Temple L.Q. at p. 782.) The California Constitution, however, now expressly authorizes the Commission to provide public access to judicial disciplinary proceedings under appropriate circumstances.

Petitioner's reliance upon *McHugh* v. *Santa Monica Rent Control Bd., supra*, 49 Cal.3d 348, and *Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 265 [284 Cal.Rptr. 718, 814 P.2d 704], is misplaced. Those decisions simply hold that administrative agencies not vested by the California Constitution with judicial powers may not exercise such powers, and may exercise only those powers reasonably necessary to effectuate the agency's primary, legitimate regulatory purposes. (*McHugh, supra*, 49 Cal.3d at pp. 356, 372; *Walnut Creek Manor, supra*, 54 Cal.3d at p. 256.) *McHugh* expressly recognizes, however, that various administrative agencies are authorized by the Constitution to exercise judicial powers, and that the exercise by these agencies of such powers does not contravene the judicial powers or separation of powers clauses. (49 Cal.3d at p. 355.) The "principle of check" articulated in *McHugh*, and applicable to decisions of administrative agencies not vested by the Constitution with judicial powers (see *McHugh, supra*, 49 Cal.3d at p. 366), is inapplicable to agencies vested with such powers.

Petitioner's argument is similar to one rejected by the Wisconsin Supreme Court in *Matter of Seraphim* (1980) 97 Wis.2d 485 [294 N.W.2d 485], involving a formal complaint brought by a judicial commission against a Wisconsin judge for alleged judicial misconduct. The judge under investigation challenged the constitutionality of the judicial disciplinary procedure established by the Wisconsin legislature on the grounds it invaded the province of an independent judiciary and emasculated the judicial power vested in the court under the separation of powers clause contained in the

Wisconsin Constitution. Like the California Constitution, however, the Wisconsin Constitution expressly authorized the legislature to establish such a procedure, and the court concluded: "It is ludicrous to argue, as [the judge] appears to in his brief, that the legislature's establishment of the procedures to be used by this court in disciplining members of the judiciary is an unconstitutional exercise of judicial power when the constitution expressly provides that such procedures are to be 'established by the legislature by law.' [¶] Nor can it be said that the procedure established by the legislature offends any separation-of-powers principle embedded in the constitution. Nothing in the constitution requires that this court have exclusive control over the manner in which members of the judiciary are disciplined and removed from office." (*Id.*, at p. 490.)

A Commission order opening a hearing is not analogous to a Commission recommendation for the censure or removal of a judge, the latter being subject to the ultimate, independent decision of this court. (Art. VI, § 18, subd. (c).) Some means of judicial review, however, of an order opening a hearing must be afforded the judge under investigation. As evidenced by the present proceeding, appropriate judicial review of a Commission order opening a hearing is available by way of petition for writ of mandamus (Code Civ. Proc., § 1085; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1990) ¶ 15:32, p. 15-14), and a judge may seek an immediate stay of an order that a press release issue or that a hearing be open (rule 56(c)).

For these reasons, we conclude the Commission's authority to order an open hearing where the constitutional criteria are met does not constitute an unconstitutional usurpation of judicial power.

■ Petitioner also asserts the provisions for open hearing are unconstitutional in light of our holding in *Mosk* v. *Superior Court, supra,* 25 Cal.3d 474, that former subdivision (f) (current subd. (h)) of article VI, section 18, mandates confidentiality of all proceedings before the Commission. Because, in drafting section 18, subdivision (f), in 1988, the Legislature relabeled subdivision (f) as section 18, subdivision (h), but did not repeal or abrogate that former provision of the California Constitution, petitioner contends that the Constitution continues to mandate complete confidentiality in such proceedings.

Petitioner's assertion is undermined in its entirety by the circumstance that the decision in *Mosk* v. *Superior Court, supra,* 25 Cal.3d 474, predated the 1988 constitutional amendment to article VI, section 18. The issue presented in *Mosk* was whether a public Commission investigation of the California

Supreme Court was unconstitutional in light of article VI, section 18, *former* subdivision (f), relating to confidentiality of proceedings. We observed that confidentiality had been considered an essential element of judicial discipline, and held that confidentiality was required under former subdivision (f), based upon, among other factors, "the absence of any indication that the people of California intended to change" the previous requirement of confidentiality when article VI was revised in 1966. (25 Cal.3d at p. 499.)

In 1988, however, the California electorate clearly manifested its intent to authorize, in appropriate cases, public access to proceedings before the Commission. The ballot arguments in favor of Proposition 92, presented to the voters, emphasized that, "[f]or our system of justice to work, it is absolutely necessary that we have complete faith in our judges," and that judicial abuses "must be addressed promptly, decisively and with sufficient openness to assure continued public confidence." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 8, 1988) argument in favor of Prop. 92, p. 58.) The ballot argument explained that "Proposition 92 proposes to open disciplinary proceedings against judges in a limited but reasonable way," allowing "an accused judge or the commission to open proceedings subsequent to formal charges in appropriate cases," because "every public official, no matter how high the office, must ultimately be accountable to the public. When the integrity of our courts comes under question, we can ill afford to be bound by a rule which concludes in every case that the public and press are better off in the dark. Such absolute secrecy is the antithesis of democracy." (*Ibid.*)

As noted in *Mosk* v. *Superior Court, supra,* 25 Cal.3d at page 491, however, confidentiality may serve several functions. These functions include: (1) encouraging participation in the disciplinary process, by protecting complainants and witnesses from retribution or harassment; (2) protecting the reputation of innocent judges, wrongfully accused of misconduct, from injury that might result from publication of unexamined and unwarranted complaints by disgruntled litigants, attorneys, or political adversaries; (3) maintaining confidence in the judiciary by avoiding premature disclosure of alleged misconduct; and (4) encouraging retirement as an alternative to costly and lengthy formal hearings. (See *Silence Isn't Always Golden, op. cit. supra,* 58 Temple L.Q. at p. 760.) In *Landmark Communications, Inc.* v. *Virginia* (1978) 435 U.S. 829, 835-836 [56 L.Ed.2d 1, 8-9, 98 S.Ct. 1535], cited extensively in our *Mosk* decision, the United States Supreme Court recognized that maintaining confidentiality *before the commencement of formal proceedings* involving judicial performance serves legitimate state interests by avoiding premature announcement of groundless claims of judicial misconduct, and, in cases where the alleged misconduct does not

warrant removal or even censure, the confidentiality of the proceedings allows the judge to be made aware of minor complaints that appropriately may be called to his or her attention without public notice.

Many of the benefits served by confidentiality diminish, however, when, following a preliminary investigation during which the judge under investigation has been afforded an opportunity to respond to and defend against accusations, a determination is made that the complaint is not frivolous and that formal proceedings should go forward. By its passage of Proposition 92, the electorate determined that, at this point in the process, the public interest in the operation of the judicial disciplinary system may be of greater concern than the risk of unwarranted damage to a judge's reputation or unwarranted loss of public confidence.

An additional reason identified in *Mosk* v. *Superior Court, supra,* in favor of confidentiality, was a "judge's constitutional right to a private admonishment (see art. VI, § 18, subd. (c)), if the circumstances so warrant." (25 Cal.3d at p. 491.) Following the passage of Proposition 92, however, any "right" to a private admonishment necessarily is limited by the constitutional amendment permitting public scrutiny of proceedings relating to judicial performance when the charges involve moral turpitude, dishonesty, or corruption. Moreover, the Commission retains the authority to maintain the confidentiality of proceedings and thus to have an entirely private admonishment in the event it concludes that public confidence and the interests of justice would not be served by an open hearing.

The circumstance that the 1988 constitutional amendment did not eliminate article VI, section 18, former subdivision (f), but rather retained and relabeled it as subdivision (h), does not reflect any contrary intent. The newly relabeled subdivision (h) simply affirms the continuing authority of the Judicial Council to promulgate rules implementing section 18, *including but not limited to* provisions relating to confidentiality (e.g., procedures for private admonishment, and to determine whether or not a hearing should be open).[12]

---

[12]Similarly, the 1988 constitutional amendment did not repeal rule 902, which provides in part that, "[e]xcept as provided in this rule, all papers filed with and proceedings before the Commission, or before the masters appointed by the Supreme Court pursuant to rule 907, shall be confidential until a record is filed by the Commission in the Supreme Court. . . ." (Rule 902(a).) Construing this rule in the context of the open hearing provisions of the 1988 constitutional amendment and rule 907.2, as we must, in the event the Commission orders open a hearing the Commission's files relating to the matters that are the subject of the open hearing may be disclosed partially or fully by the Commission incident to, and as a necessary consequence of, the open hearing, and to that extent would not remain confidential.

## IV

 Petitioner next contends that, in determining whether the charges involve moral turpitude, the Commission must consider not only the charges specified in the notice of formal proceedings, but, in addition, the defenses and explanations asserted by the judge in his or her answer to the charges, together with the evidence submitted in support of those defenses and explanations. He argues that if there is evidence made available to the Commission that justifies or explains the conduct in question, or that demonstrates the charges are unfounded, the Commission should consider this evidence before taking the "drastic step" of deviating from the state's general policy of confidentiality and thereby possibly imposing irreparable damage to the judge's reputation and credibility.

The Court of Appeal, focusing upon the language of article VI, section 18, subdivision (f)(3), and specifically the term "charges," concluded that the determination whether charges involve moral turpitude, dishonesty, or corruption must be based solely upon the written charges set forth in the formal pleading filed by the Commission, and does not require consideration of the judge's proffered defenses or explanations.

In our view, neither the contention of petitioner nor the conclusion of the Court of Appeal properly recognizes or takes into account the circumstance that, prior to making the determination whether charges involve moral turpitude, the Commission, pursuant to the authority vested in it by article VI, section 18, already will have reviewed and assessed a significant body of information pertinent to the complaint of misconduct, including all material provided by the judge that he or she believes to be relevant and material to the evaluation of the accusations, and that may explain, justify, or place in context the conduct in question. As explained *ante*, in part II, the decision to initiate formal proceedings with the filing of formal charges is preceded by the Commission's preliminary investigation (rule 904.2) of complaints of misconduct, an investigation that may involve contacting witnesses, reviewing court records, and conducting such other investigation as the issues may warrant. (Com. on Jud. Performance, Ann. Rep., *supra*, at pp. 2-3.) The judge must be notified of the preliminary investigation and the nature of the charges, and afforded an opportunity to respond and to "present such matters as the judge may choose." (Rule 904.2(a).) Thereafter, in inviting briefing (pursuant to rule 907.2 (a)) in response to the preliminary decision to open a hearing, the Commission *again* in its discretion considers the evidence, information, and arguments that may be submitted by the judge in opposition to an open hearing, a step in the proceedings that may shed further light upon the judge's conduct.

Thus, a determination that charges involve moral turpitude is based not upon the particular language chosen by the Commission in framing the

formal written charges, but rather upon the Commission's independent preliminary assessment of the judge's conduct and the reliability and truth of the allegations, including evidence relating to the motivation of the judge as well as his or her explanation for the alleged misconduct uncovered by the Commission in its preliminary investigation. The additional determinations requisite to an open hearing under article VI, section 18, subdivision (f)(3)—that such a hearing would promote public confidence and the interests of justice—also are based necessarily upon the Commission's broad, overall assessment of the judge's culpability.[13]

Contrary to the suggestion of the Court of Appeal, therefore, the Commission does not make its determination whether charges warrant an open hearing based solely upon the "four corners" of the pleading.

We reject, however, any suggestion by petitioner that the Commission, prior to the determination to open a hearing, must render some form of preliminary formal findings relating to the defenses asserted by the judge in the answer to the formal charges. Article VI, section 18, subdivision (f)(3), at this stage of the proceedings does not contemplate such a procedure, which would require the resolution of contested factual matters.

V

The Court of Appeal construed the criteria "involve moral turpitude, dishonesty, or corruption" under article VI, section 18, subdivision (f)(3), to signify charges that "necessarily" or "unavoidably" involve such conduct or behavior, and not charges that only possibly will prove to involve such

---

[13]In the course of its opinion, the Court of Appeal suggested that the phrase "in the pursuit of public confidence and the interests of justice" in article VI, section 18, subdivision (f)(3), applies only to the Commission's decision to "issue press statements or releases . . . ." In our view, neither the structure nor the purpose of the constitutional provision supports the Court of Appeal's conclusion in this regard.

The provision states in full that "[t]he Commission on Judicial Performance *may in the pursuit of public confidence and the interests of justice, issue press statements or releases* or, in the event charges involve moral turpitude, dishonesty, or corruption, open hearings to the public." (Italics added.) If the reference to "the pursuit of public confidence and the interests of justice" had been intended to refer solely to the issuance of press statements or releases (and not additionally to the opening of hearings), the drafters would not have included a comma after the word "justice" and prior to the phrase "issue press statements or releases . . . ." Furthermore, it appears clear, from the preamble to the legislative resolution, setting forth the purpose of the amendment, quoted, *ante*, that the Commission should consider "the pursuit of public confidence and the interests of justice" in determining both whether to open its hearings to the public and to issue press statements or releases. Thus, the Judicial Council, in drafting rule 907.2, reasonably construed the phrase "may in the pursuit of public confidence and the interests of justice" as modifying both the issuance of press statements or releases and the opening of Commission hearings to the public.

conduct or behavior. The Court of Appeal concluded, with respect to the allegation of petitioner's purchase of the Mercedes from Williams's dealership, that because petitioner had reserved jurisdiction in the Security Pacific litigation for the purpose of determining attorney fees and costs on appeal, the implication was unavoidable that, when petitioner contacted Williams, he was soliciting a "good deal" for an automobile, a circumstance necessarily involving corruption. The Court of Appeal further concluded that petitioner's alleged misconduct in falsely representing to the Commission that Williams's attorney, Patrick Frega, had not appeared before him since 1984 necessarily entailed dishonesty.

With respect to the remaining charges, however, the appellate court determined that it was possible petitioner had been unaware, as a result of mere inadvertence, that his conduct gave rise to a conflict of interest or violated a canon of judicial ethics, or that the statements he made to the Commission in response to its inquiries were inaccurate. The court concluded, therefore, that these latter charges "may or *may not* involve moral turpitude, dishonesty, or corruption, depending on all the circumstances which come to light," but did not *necessarily* involve such behavior, and therefore did not meet the constitutional criteria for an open hearing.

In reaching its construction of the language of article VI, section 18, subdivision (f)(3), the Court of Appeal relied upon this court's application of the phrase "involving moral turpitude" in the context of professional license-revocation cases. These cases are not determinative of the issue in the present case, however, and the Court of Appeal's reliance upon them was misplaced.

In professional license-revocation cases, involving revocation based upon conviction of a crime involving moral turpitude, this court has considered the issue whether a license may be revoked on the basis of mere proof of conviction, without any consideration of the specific facts underlying the conviction. In these cases we have held: " 'Only if the minimum elements for a conviction necessarily involve moral turpitude and a conviction cannot be had without proof of facts showing moral turpitude, can the conviction be held to be of an offense involving moral turpitude.' " (*Cartwright* v. *Board of Chiropractic Examiners* (1976) 16 Cal.3d 762, 766-767 [129 Cal.Rptr. 462, 548 P.2d 1134], quoting *Lorenz* v. *Board of Medical Examiners* (1956) 46 Cal.2d 684, 687 [298 P.2d 537].) These cases, however, do not stand for the proposition that when the crime underlying the conviction, considered in the abstract, does not necessarily involve moral turpitude, a disciplinary authority such as the Commission is precluded from reviewing the specific facts in the particular case constituting proof of the crime, independent of the fact of

the conviction, to determine whether the conduct of the charged individual actually involved moral turpitude. In *Lorenz* v. *Board of Medical Examiners, supra,* 46 Cal.2d at page 687, the court made clear that a licensee can be disciplined, even when the offense does not necessarily involve moral turpitude, provided he or she is charged with fraudulent or immoral acts and is afforded a hearing on that charge.

■ With respect to judicial disciplinary proceedings before the Commission, however, article VI, section 18, subdivision (f)(3), authorizes an open hearing when the "charges" involve moral turpitude. As stated previously, the Commission does not make its moral turpitude determination based solely upon the language of the formal pleading, but rather does so upon the results of its investigation and assessment of the actual conduct of the judge, as determined preliminarily by the Commission. Thus, regardless whether the formal written charges encompass conduct that, in the abstract, may or may not involve moral turpitude, the Commission makes its independent overall assessment of the judge's culpability in determining whether the alleged misconduct involves moral turpitude.

Moreover, in a judicial disciplinary proceeding, the threshold requirements for an open hearing under article VI, section 18, subdivision (f)(3), serve a purpose different from that served by the criteria for revocation in professional-licensing cases. The policy supporting license revocation based upon conviction of a crime involving moral turpitude is the state's need to regulate a profession based upon criteria having a demonstrable bearing upon fitness to practice the profession. (*Cartwright* v. *Board of Chiropractic Examiners, supra,* 16 Cal.3d at p. 767.) In construing the meaning of the moral turpitude criteria under subdivision (f)(3), however, we must look to their purpose and the objective to be accomplished in the context of judicial disciplinary proceedings. In such a proceeding, the determination whether charges involve moral turpitude is not made for the purpose of a final adjudication of the merits of the charges, i.e., the determination is not made for the purpose of determining whether to censure or remove a judge for misconduct under article VI, section 18, subdivision (c). Instead, such a determination is made for the purpose of deciding whether public scrutiny should occur during the hearing process in order to further the policies to be served by an open hearing, including fostering public confidence in the integrity and accountability of the judiciary. The ultimate determination to be made is whether the charges should be heard by the public, not whether the charges necessarily involve certain behavior or reprehensible mens rea on the part of the judge under investigation.

Accordingly, in the present case, even if the facts alleged in the notice of formal proceedings did not necessarily or unavoidably involve moral turpitude, the Commission nevertheless had the discretion to determine that the

particular facts established in the course of its investigation, and the decision to file formal charges, justified the conclusion that the judge's actions did involve moral turpitude, dishonesty, or corruption, within the meaning of article VI, section 18, subdivision (f)(3).

## VI

Under article VI, section 18, subdivision (h), the Judicial Council is granted authority to promulgate rules implementing section 18. Pursuant to this provision, the Judicial Council adopted rule 907.2, establishing a procedure enabling the Commission, in the event *any* of the charges involve moral turpitude, to open the hearing on *all* charges, if doing so would promote public confidence and the interests of justice. Petitioner contends the open hearing procedure under rule 907.2, implementing the constitutional amendment, constitutes an erroneous construction by the Judicial Council of article VI, section 18, subdivision (f)(3), and violates the equal protection provisions of the federal and state Constitutions in two respects.

Article VI, section 18, subdivision (f)(3), provides that the Commission "may in the pursuit of public confidence and the interests of justice . . . in the event charges involve moral turpitude, dishonesty, or corruption, open hearings to the public." ■ Petitioner argues this constitutional language does not contemplate a single, open hearing on *all* the charges in the event some, but not all, of the charges meet the constitutional criteria for an open hearing, and that, accordingly, rule 907.2 constitutes an overly broad construction of, and improperly extends the Commission's authority under, the constitutional amendment.

The language of article VI, section 18, subdivision (f)(3), is ambiguous with respect to whether the Commission must restrict an open hearing only to those charges involving moral turpitude, or whether instead an open hearing may be held for the proceeding as a whole whenever at least one of the charges at issue involves moral turpitude. In promulgating rule 907.2, the Judicial Council construed the pertinent constitutional language as authorizing the Commission in its discretion *to* order an open hearing on all charges in the event one of the charges involves moral turpitude.

As a general rule, past or contemporaneous interpretation by an administrative entity of its constitutional authority, and of a constitutional provision it is charged with implementing, is accorded considerable weight (see *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281]), and courts generally will not depart from such construction unless it is clearly erroneous or

# 658

unauthorized. (See *County of Alameda* v. *State Bd. of Control* (1993) 14 Cal.App.4th 1096, 1106 [18 Cal.Rptr.2d 487]; *South Bay Union School Dist.* v. *Public Employment Relations Bd.* (1991) 228 Cal.App.3d 502, 506-507 [279 Cal.Rptr. 135].) The Judicial Council, as an independent agency charged with a specialized and focused task of promulgating rules implementing an open hearing procedure in judicial disciplinary proceedings, is the entity " 'presumably equipped or informed by experience' " to perform such task, and whose findings warrant deferential treatment by the court. (*South Bay Union School Dist.* v. *Public Employment Relations Bd., supra,* 228 Cal.App.3d at p. 506.) In the present case, rule 907.2, authorizing a single, open hearing if one, but not all, of the charges involve moral turpitude, effectuates the purpose of the constitutional amendment by diminishing the risk of public skepticism that might result if only a segment of the charges brought against a judge in a particular case were dealt with in an open hearing. The Judicial Council reasonably could conclude that, in this setting, the goal of public confidence in the judiciary and in the disciplinary procedure might not be furthered if the public were permitted to observe only a portion of the proceedings, leaving to speculation the nature and gravity of the other alleged misconduct and its relationship to the moral turpitude charges.

For these reasons, we conclude the single-hearing procedure authorized under rule 907.2 does not constitute an improper expansion of the Commission's grant of authority under article VI, section 18, subdivision (f)(3).

We emphasize, however, that the Commission is not required to hold open hearings on all charges whenever any charge involves moral turpitude, and in many cases the Commission may well determine that the charges that do not involve moral turpitude clearly are distinct and severable from the charges that do involve moral turpitude, and that a closed hearing on those charges would not threaten public confidence in the proceedings or imperil the interests of justice.

 Petitioner next contends that the open hearing procedure under rule 907.2 violates the equal protection provisions of the state and federal Constitutions by creating arbitrary classifications (1) between judges facing charges involving moral turpitude and judges facing charges that do not fall within that category, and (2) between judges facing no charges of moral turpitude and judges facing charges, one or more of which (but not all of which) involve moral turpitude.

Petitioner asserts these classifications impinge upon a fundamental interest, namely the judge's right to confidentiality under article VI, section 18,

subdivison (h) (former subd. (f)), as construed in *Mosk* v. *Superior Court, supra,* 25 Cal.3d 474, and his or her right to privacy under article I, section 1, of the California Constitution, and the federal Constitution. Because these classifications assertedly impinge upon a fundamental interest, he argues they are subject to strict scrutiny analysis and cannot withstand such scrutiny, because they do not further any compelling state interest.

■ The equality guaranteed by the equal protection clauses of the federal and state Constitutions is equality under the same conditions, and among persons similarly situated. The Legislature may make reasonable classifications of persons and other activities, provided the classifications are based upon some legitimate object to be accomplished. (8 Witkin, Summary of Cal. Law (9th ed 1988) Constitutional Law, § 599, p. 51.) The strict scrutiny standard of review applies only if a legislative classification involves a suspect classification or significantly infringes upon a fundamental right. (*In re Demergian* (1989) 48 Cal.3d 284, 291-292 [256 Cal.Rptr. 392, 768 P.2d 1069].)

■ Contrary to petitioner's contention, the determination to open a disciplinary proceeding before the Commission does not impinge upon any fundamental right of the subject judge. Generally, classifications inherent in judicial or State Bar disciplinary procedures do not implicate any fundamental interest of the judge or attorney who is under investigation or subject to discipline. (See *Kennick* v. *Commission on Judicial Performance* (1990) 50 Cal.3d 297, 310-311 [267 Cal.Rptr. 293, 787 P.2d 591] [classification inherent in disciplinary sanctions distinguishing an attorney's conduct while a judge from other conduct was subject to rational basis test]; *In re Demergian, supra,* 48 Cal.3d at pp. 291-292; see also *Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410, 423 [205 Cal.Rptr. 576] [burdens imposed by judge's retirement law upon a judge's right to seek and retain elective office do not infringe upon any fundamental right].) Any "right" of a judge to maintain the confidentiality of disciplinary proceedings is not a constitutionally fundamental one. As we have explained, *ante,* among the primary traditional purposes of confidentiality are the need to accommodate the interests of complainants and witnesses, to avoid unnecessary publicity related to unfounded complaints, and to encourage a judge guilty of serious misconduct to retire before the commencement of formal proceedings—and not solely, or even primarily, to avoid unwarranted damage to the reputation of the subject judge.[14] (See *Landmark Communications, Inc.* v. *Virginia, supra,* 435 U.S. 829, 835-836 [56 L.Ed.2d 1, 8-9].) The commentary to canon 2A of the Code of Judicial Conduct explains that "[a] judge must expect to be the

---

[14]Indeed, the interests and reputation of a judge likely will be served if the public is made aware of the evidence introduced at a hearing that leads to the judge's exoneration, thus

subject of constant public scrutiny." Moreover, "[a]lthough judges have a discernible privacy interest pending investigation of the alleged misconduct," the rationale is far less compelling for retaining confidentiality beyond the commencement of formal proceedings, at which point the charges have been found to have a sufficient basis to require a formal hearing and the risk of unwarranted damage to reputation is decreased. (See *Silence Isn't Always Golden, op. cit. supra,* 58 Temple L.Q. at pp. 762-763.)

For these reasons, in reviewing petitioner's equal protection claim we apply the rational basis test: are the challenged classifications " 'rationally related to a legitimate governmental purpose' "? (*Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 913 [13 Cal.Rptr.2d 245, 838 P.2d 1198].) With respect to the first classification, the need to promote public confidence in the judiciary is a rational basis for treating proceedings involving charges of moral turpitude, dishonesty, or corruption differently from proceedings that do not involve such charges. In the abstract, an act of "moral turpitude" is defined as behavior that "gravely violates" accepted moral standards of a community (Black's Law Dict. (6th ed. 1990), p. 1009); dishonesty denotes a "lack of integrity" (*id.,* at p. 468), and "corruption" is "[t]he act of an official or fiduciary person who unlawfully and wrongfully uses his station or character to procure some benefit for himself or for another person, contrary to duty and the rights of others." (*Id.,* at p. 345.) Thus, moral turpitude, dishonesty, and corruption[15] generally refer to acts or a mens rea that adversely reflects upon a judge's integrity, honesty, and regard for the judicial office as a public trust. The independence and integrity of the judge therefore are seriously implicated when charges of this nature are involved. The policy promoted by an open hearing on such charges is that of responsible public disclosure and accountability, which will achieve the goal of public confidence in the integrity of the judicial system.

Therefore, we conclude the criteria of charges involving moral turpitude, dishonesty, or corruption constitute a reasonable, threshold requirement that must be met before the Commission, in its discretion, may open the hearing upon its determination that doing so would promote public confidence and the interests of justice.

This same purpose of promoting public confidence and reassurance in the integrity and accountability of the judiciary provides a rational basis for the

avoiding public suspicion that the judge has eluded appropriate discipline or that the disciplinary system otherwise has failed.

[15]The criteria of "moral turpitude, dishonesty, or corruption" appear to have been adopted directly from the State Bar Act (Bus. & Prof. Code, § 6106 ["The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension."].)

second classification challenged by petitioner under rule 907.2(c), which permits a public hearing on *all* charges if *any* of the charges involve moral turpitude. The significance and gravity of the moral turpitude charges may well be determined only in the context of the other charges, for example, whether an alleged act of moral turpitude constitutes a single, isolated incident or part of a pattern of misconduct. Additionally, as explained, *ante*, public confidence in the fairness and final result of a disciplinary procedure may be diminished if the public is permitted to observe only a portion of the proceedings, and is left with an incomplete understanding of the conduct of the subject judge that gave rise to the institution of formal proceedings. A single hearing on all charges also may be a more efficient means of implementing the open hearing procedure.

Accordingly, we conclude that the single-hearing procedure under rule 907.2(c), permitting an open hearing on all the charges if any of the charges satisfy the criteria under article VI, section 18, subdivision (f)(3), for an open hearing, bears a rational relationship to a legitimate governmental objective.

For these reasons, the classifications embodied in the open hearing procedure under rule 907.2 do not violate petitioners right to equal protection of the laws under the federal or state Constitutions.

## VII

Turning to the specific charges contained in the amended notice of formal proceedings, we conclude the Commission properly exercised its discretion in determining that counts 1 and 2 of the formal charges involve moral turpitude and corruption and that count 4 of the formal charges involve moral turpitude, dishonesty, and corruption.

In evaluating the alleged misconduct of a judge, moral turpitude, dishonesty, and corruption must be construed in the context of the duties and responsibilities of the judicial office, and the standards to which we hold judges and their fitness for office. (See *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 227-228 [82 Cal.Rptr. 175, 461 P.2d 375].)

The standards of conduct to which judges are held are reflected in part in the canons of the Code of Judicial Conduct. Although these canons do not have the force of law or regulation, "they reflect a judicial consensus regarding appropriate behavior" for California judges. (*Kloepfer* v. *Commission on Judicial Performance* (1989) 49 Cal.3d 826, 838, fn. 6 [264 Cal.Rptr. 100, 782 P.2d 239, 89 A.L.R.4th 235]; see *Cannon* v. *Commission on*

*Judicial Qualifications* (1975) 14 Cal.3d 678, 707, fn. 22 [122 Cal.Rptr. 778, 537 P.2d 898].) The failure of a judge to comply with the canons "suggests performance below the minimum level necessary to maintain public confidence in the administration of justice." (*Kloepfer* v. *Commission on Judicial Performance, supra,* 49 Cal.3d at p. 838, fn. 6.)

Canon 4D(4), pertaining to gifts, states that judges "should not accept . . . a gift, bequest, favor or loan from anyone except for: . . ." The canon proceeds to list seven exceptions (including "ordinary social hospitality") to what is otherwise an absolute prohibition against the receipt of gifts. (Cal. Code Jud. Conduct, canon 4D(4)(a)-(g).)[16] Therefore, unless the gift falls within one of the enumerated exceptions, the judge's acceptance of the gift is prohibited.

Canon 4D(5) of the Code of Judicial Conduct appears to state a separate rule, that judges should not accept gifts from lawyers and others who are likely to come before the judge. The commentary to canon 4D(5) explains that the canon "prohibits judges from accepting gifts, favors, bequests or loans from lawyers or their firms, if they have come or are likely to come before the judge; it also prohibits gifts, favors, bequests or loans from clients of lawyers or their firms when the clients' interests have come or are likely to come before the judge." (Cal. Code Jud. Conduct, com. to canon 4D(5).) By its express terms, canon 4D(5) does not apply if the gift otherwise falls within any of the exceptions listed in canon 4D(4). Canon 4D(5) serves to emphasize, however, that the receipt of a gift, like all other activities of a judge, must not cast reasonable doubt upon the judge's capacity to act impartially as specified in canons 2A and 4A(1).

The Code of Judicial Conduct does not define the word "gift." The California Fair Political Practices Commission defines it as "anything of value, whether tangible or intangible, for which equal or greater value is not provided." (Cal. Fair Political Practices Com., 1993-1994 Statement of Economic Interests, Schedule F.) In its formal opinion, the Judicial Ethics Committee observes in this regard: "It is the Committee's opinion that in applying the canons the word "gift" should be interpreted broadly, and consistent . . . with the policies which support the prohibition against gifts.

---

[16]In its formal opinion on the subject of acceptance of gifts from attorneys, the Judicial Ethics Committee of the California Judges Association has defined "ordinary social hospitality" (one of the exceptions to the prohibition of acceptance of gifts under canon 4D(4)) as follows: "It is that type of social event or other gift which is so common among people in the judge's community that no reasonable person would believe that (1) the donor was intending to or would obtain any advantage or (2) the donee would believe that the donor intended to obtain any advantage." (Cal. Judges Assn., Jud. Ethics Com., Opn. No. 43 (1994) at p. 4, published in Rothman, Cal. Judicial Conduct Handbook.)

(See Canons 2A, 2B, and 4A(1).)" (Cal. Judges Assn., Jud. Ethics Com., Opn. No. 43, *supra*, at p. 2.)

Although generally a violation of a canon will constitute conduct below the standards expected of California's judges, not all such violations involve moral turpitude, dishonesty, or corruption. But a judge's solicitation, or knowing acceptance, of favors or benefits having a substantial monetary value from a litigant or attorney whose case presently is pending before the court is inherently corruptive, suggesting improper use of the prestige of office.

In judicial disciplinary proceedings in other states, a judge's receipt of gifts from attorneys or litigants, who appeared (or were likely to appear) before the judge, has been found to warrant discipline. In *In re D'Auria* (1975) 67 N.J. 22 [334 A.2d 332, 333], a lawyer, while acting as a workers' compensation judge, on numerous occasions was a luncheon guest of attorneys and insurance representatives who had matters pending before him. The court, although finding that none of the attorneys had expected or received any preferential treatment from the judge, concluded the judge's acceptance of the lunches was "unprofessional, improper and unethical," bearing an "obvious appearance of impropriety." (*Ibid.*) The court explained: "[A][j]udge's acceptance of gratuities and favors from those who have business with the [court] is inherently wrong. It has a subtle, corruptive effect, no matter how much a particular judge may feel that he is above improper influence." (*Ibid.*) In *In re Kral* (1973) 1 Ill. Cts. Com. 20, a judge was disciplined for accepting a discount for wallpaper and other decorating materials from a litigant who had appeared before him, the judge paying only $2,000 for $2,900 worth of merchandise. The discount had been arranged by an attorney who previously had appeared before the judge.

In decisions involving the discipline of *attorneys* for favors conferred upon judges, the principles supporting the condemnation of such conduct are comparable to those applicable in judicial disciplinary cases, reflecting the serious impropriety of conferring gifts upon judges under inappropriate circumstances. For example, in *In re D'Angelo* (1988) 126 Ill.2d 45 [127 Ill.Dec. 779, 533 N.E.2d 861], an attorney was disbarred for expending thousands of dollars for car rentals for judges and politicians. The court characterized the attorney's conduct as displaying "dishonesty, fraud, deceit, or misrepresentation," which "brought the court and the legal profession into disrepute" and was prejudicial to the administration of justice. (*Id.*, at p. 866; see also *In re Weinstein* (1989) 131 Ill.2d 261 [137 Ill.Dec. 72, 545 N.E.2d 725, 729] ["An attorney who performs a favor for a judge before whom he is likely to appear compromises the fairness and impartiality of the tribunal and prejudices the administration of justice."].)

In the present case, count 1 of the formal charges alleges facts involving petitioner's active solicitation of a favorable transaction, involving the purchase of an automobile, from a litigant at the same time the litigant's case was pending before the court. It is alleged that, shortly after awarding a $5 million judgment in favor of Williams in the Security Pacific v. Williams litigation, while retaining jurisdiction for a limited purpose (attorney fees and costs) pending appeal, petitioner contacted Williams, seeking to purchase a Mercedes, and ultimately purchased such a vehicle from this litigant at a price that appeared to be unduly favorable to petitioner. Seeking out and accepting a favorable transaction under these circumstances clearly would denote a lack of integrity, as well as corruption and conduct contrary to the moral standards required of the judicial office. Readily inferable from these allegations is that the judge was attempting to receive favors for past deeds, purposefully taking advantage of the power and prestige of his judicial office, and wrongfully using his office to procure a benefit for himself. Petitioner's alleged misconduct violated several canons of judicial conduct, particularly the proscription against acceptance of gifts from litigants whose interests have come, or are likely to come, before the judge (canon 4D(5)), as well as the more general proscription against conduct that may create an appearance of special influence over the judge (canon 2B) or that erodes public confidence in the integrity or impartiality of the judiciary (canon 2A).

The charges set forth in count 2, involving the alleged payment of substantial monetary amounts by Williams's attorney, Patrick Frega, for petitioner's benefit (for the purchase of a Jeep for the judge's daughter, and for automotive repairs), shortly after Frega and his client had prevailed in significant litigation before petitioner, also suggests petitioner's improper use of his office and lack of integrity. This alleged misconduct also constitutes a violation of canon 4D(5).

The remaining allegations of benefits and favors accepted by petitioner, including a discount on repairs for his daughter's Jeep, the celebratory dinner with Frega at the latter's expense, the loan of a computer from Frega, a weekend stay at a desert condominium owned by an attorney whom petitioner frequently appointed to serve as special master, and the $600 legal fee write-off, considered in the context of the other favors and benefits improperly accepted, suggest conduct going well beyond the inadvertent acceptance of trivial favors or gratuities, and depict a pattern of disregard for the high standards of ethical conduct required of our judiciary. Under these circumstances, the allegations relating to these gifts also denote corruption, poor moral conduct, and lack of integrity.

We further conclude the Commission did not abuse its discretion in determining the charges set forth in count 4 of the notice of formal proceedings involved moral turpitude, dishonesty, and corruption. Providing information to the Commission—the governmental entity charged with the protection of the public from judicial corruption—that is false, inaccurate, and misleading in numerous, material respects clearly may fall within the scope of such reprehensible behavior and culpable mens rea.

Finally, although the Commission determined that the charges set forth in count 3 did not involve moral turpitude, we conclude that the Commission did not abuse its discretion in determining that the open hearing should encompass these charges as well. The latter charges are relatively minor in gravity in comparison to the charges set forth in the other counts, and evidence of the circumstances of these charges will place in better perspective the judge's relationship and dealings with Williams's attorney and his law firm.

## VIII

The judgment of the Court of Appeal is reversed to the extent it granted relief sought by petitioner, and is otherwise affirmed.

Lucas, C. J., Mosk, J., Kennard, J., Arabian, J., Baxter, J., and Werdegar, J., concurred.