*CJP Supp. 65 Opinion
HORN, Vice-chairperson.
This disciplinary matter concerns John D. Harris, a former judge of the Superior Court of California for the County of Los Angeles. Judge Harris began his judicial career as a judge of the Los Angeles County Municipal Court in October 1984, and began serving as a judge in the superior court in January 1999. Judge Harris retired from the bench in 2004.
Based on the admissions made by Judge Harris, the record in this case and the findings and conclusions of the special masters, we conclude that Judge Harris’s conduct established in connection with count one A, count one B, count two D, count two F and count four constituted prejudicial misconduct, and that his conduct established in connection with count two B, count two E, count two G, count two H and count three constituted improper action.
For reasons more fully set forth hereafter, we conclude that a public admonishment is appropriate.
Procedural History
Formal proceedings in this matter commenced on February 18, 2004, with the filing of a notice of formal proceedings setting forth five counts. On March 4, 2004, Judge Harris filed his verified answer.
Pursuant to rule 121(b) of the Rules of the Commission on Judicial Performance, the California Supreme Court appointed three special masters to conduct an evidentiary hearing and issue a written report: the Honorable Eileen C. Moore from the Court of Appeal for the Fourth Appellate District, Division Three; the Honorable Patrick J. Morris from the Superior Court of California for the County of San Bernardino; and the Honorable Henry J. Walsh from the Superior Court of California for the County of Ventura. An evidentiary hearing was held in Pasadena commencing on May 24, 2004, and concluding on May 28, 2004, and the special masters filed their report to the Commission on August 12, 2004.
The Commission heard the matter on January 26, 2005. The participating commission members included Justice Vance W. Raye, chairperson, Judge Frederick P. Horn, Michael A. Kahn, Mrs. Crystal Lui, Ms. Patricia Miller,
*CJP Supp. 66 Jose C. Miramontes, Ms. Penny Perez, Judge Rise Jones Pichón and Ms. Barbara Schraeger. Marshall B. Grossman recused himself. Andrew Blum appeared for the examiner, and former Judge John D. Harris appeared with his counsel, Edward P. George, Jr.
Governing Law
The purpose of Commission proceedings is not to punish, but instead to protect the public, assure the evenhanded and efficient administration of justice, and maintain public confidence in the integrity of the judicial system. (Kloepfer v. Commission on Judicial Performance (1989) 49 Cal.3d 826, 864-865 [264 Cal.Rptr. 100, 782 P.2d 239].) The Commission reviews the evidence, adopts findings of fact and conclusions of law, and imposes discipline in furtherance of these goals.
The notice of formal proceedings filed with the Commission on February 18, 2004, charged Judge Harris with (1) willful misconduct in office, (2) conduct prejudicial to the administration of justice that brings the judicial office into disrepute, and (3) improper action. (Cal. Const., art. VI, § 18.) The Commission may censure or remove a judge or former judge for willful misconduct or prejudicial misconduct. (Cal. Const., art. VI, § 18, subd. (d).) In addition, the Commission may publicly or privately admonish a judge or former judge for improper action. (Ibid.)
Willful misconduct is unjudicial conduct committed in bad faith by a judge acting in his judicial capacity. (Fletcher v. Commission on Judicial Performance (1998) 19 Cal.4th 865, 877-878 [81 Cal.Rptr.2d 58, 968 P.2d 958] (Fletcher).) To support a finding of bad faith, the evidence must establish that the judge performed a judicial act (1) for a corrupt purpose, i.e., any purpose other than the faithful discharge of judicial duties, (2) with knowledge that the act is beyond the judge’s lawful judicial power, or (3) exceeding the judge’s lawful power with a conscious disregard for the limits of the judge’s authority. (Fletcher, supra, 19 Cal.4th at p. 878.)
Prejudicial misconduct does not require proof of bad faith, but instead consists of acts that a judge undertakes in good faith but which would nevertheless appear to an objective observer to be unjudicial and prejudicial to public esteem for the judicial office. (Fletcher, supra, 19 Cal.4th at p. 878.) It is not necessary to prove actual notoriety, but only that the conduct, if known to an objective observer, would appear to be prejudicial to public esteem for the judicial office. (Adams v. Commission on Judicial Performance (1995) 10 Cal.4th 866, 878 [42 Cal.Rptr.2d 606, 897 P.2d 544] (Adams II) ) The subjective intent or motivation of the judge is not a significant factor in assessing whether prejudicial misconduct has occurred. (Ibid.) This objective *CJP Supp. 67 standard is consistent with the California Supreme Court’s holdings in judicial discipline cases, and with canon 2 of the California Code of Judicial Ethics, which provides that a judge shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. (Ryan v. Commission on Judicial Performance (1988) 45 Cal.3d 518, 531 [247 Cal.Rptr. 378, 754 P.2d 724]; see also Advisory Com. com., Cal. Code Jud. Ethics, canon 2A [a judge must avoid the “appearance” of impropriety].)
The canons of the California Code of Judicial Ethics reflect a judicial consensus regarding appropriate behavior for California judges. (Adams v. Commission on Judicial Performance (1994) 8 Cal.4th 630, 661 [34 Cal.Rptr.2d 641, 882 P.2d 358] (Adams I).) The failure of a judge to comply with the canons “ ‘suggests performance below the minimum level necessary to maintain public confidence in the administration of justice.’ ” (Adams I, supra, 8 Cal.4th at pp. 661-662, quoting Kloepfer v. Commission on Judicial Performance, supra, 49 Cal.3d at p. 838, fn. 6.)
A violation of a canon of the California Code of Judicial Ethics may form the basis for a determination of willful or prejudicial misconduct if the violation was committed intentionally or recklessly, or if the violation constituted unjudicial conduct or conduct prejudicial to public esteem for the judicial office. But even if the violation of a canon does not rise to the level of willful or prejudicial misconduct, it would still constitute improper action within the meaning of article VI, section 18, subdivision (d) of the California Constitution. (See, e.g., Adams II, supra, 10 Cal.4th at p. 899.)
When special masters are appointed pursuant to rule 121(b) of the Rules of the Commission on Judicial Performance, they are tasked with making findings of fact and conclusions of law, but they do not make recommendations as to discipline. (Rules of Com. on Jud. Performance, rule 129(d).) The Supreme Court recognizes the expertise of the Commission in evaluating judicial misconduct, and gives great weight to the Commission’s conclusions of law. At the same time, however, special weight should be given to the factual determinations of the special masters because the masters have the advantage of observing the demeanor of the witnesses. (Fletcher, supra, 19 Cal.4th at p. 878; Broadman v. Commission on Judicial Performance (1998) 18 Cal.4th 1079, 1090 [77 Cal.Rptr.2d 408, 959 P.2d 715].) Nonetheless, the California Constitution vests in the Commission the power to impose judicial discipline, subject to review by the Supreme Court. Thus, the Commission may determine that it is appropriate to disregard the findings of fact and conclusions of law made by the special masters and make its own findings and conclusions. (Geiler v. Commission on Judicial Qualifications (1973) 10 Cal.3d 270, 275 [110 Cal.Rptr. 201, 515 P.2d 1].)
*CJP Supp. 68 The Evidence Code is applicable to all hearings before the Commission or the special masters. (Rules of Com. on Jud. Performance, rule 125(a).) There must be clear and convincing evidence to sustain the charges to a reasonable certainty. (Fletcher, supra, 19 Cal.4th at p. 878; Broadman v. Commission on Judicial Performance, supra, 18 Cal.4th at p. 1090; Geiler v. Commission on Judicial Qualifications, supra, 10 Cal.3d at p. 275.) The evidence need not establish a fact beyond a reasonable doubt, but must be so clear as to leave no substantial doubt and sufficiently strong to command the unhesitating assent of every reasonable mind. (Broadman, supra, 18 Cal.4th at p. 1090.)
Findings And Conclusions

Count One A

In June and July 2000, Judge Harris presided over People v. Tellez, case No. BA1999915. The Tellez case was a felony sexual assault trial in which the defendant was charged with molesting his niece, Kassandra G. During the presentation of evidence, Judge Harris suggested to the attorneys that he meet with Kassandra to commend her courage in testifying. Because the defense counsel objected, the judge did not meet with Kassandra at that time. However, immediately after the verdict and prior to the sentencing hearing,[1] Judge Harris initiated a meeting with Kassandra in chambers. The meeting occurred outside the presence of the prosecutor and the defense counsel. During the meeting with Kassandra, Judge Harris commended her bravery, told her that her testimony was believable, told her that he could be part of her family, and stated, “I could be your grandfather.” He told her, “if I can ever do anything to help you, or if you need a letter of recommendation to help get into college, please let me know.” Based on Judge Harris’s meeting with the victim, the Court of Appeal issued a writ of habeas corpus vacating the sentence that Judge Harris imposed, and remanding the case for sentencing before a different judge.
Judge Harris may have been motivated by humanitarian concerns in meeting with Kassandra, but as Judge Harris acknowledged during his testimony, his meeting with the victim could give the appearance of impropriety. Judge Harris’s comments to a witness in a pending criminal proceeding that “I can be part of your family” and “I can be your grandfather,” and his comment to her to let him know if “I can ever do anything to help you,” could raise questions in the mind of an objective observer regarding the judge’s impartiality in the pending case.
*CJP Supp. 69 Contrary to the masters, we find no evidence in the record to support a finding of an emergency that would require a private meeting in chambers between the judge and a witness in a pending criminal proceeding outside the presence of counsel. Nor is there evidence in the record establishing that Judge Harris made provision to promptly notify all other parties of the substance of the communications in the meeting, giving them an opportunity to respond. (See Cal. Code Jud. Ethics, canon 3B(7)(d)(ii).)
We conclude that Judge Harris’s conduct in meeting with a witness in a pending criminal action outside the presence of counsel, even though the judge may have been acting in good faith, would nevertheless appear to an objective observer to be unjudicial and prejudicial to public esteem for the judicial office. We conclude that Judge Harris’s conduct violated canon 2A of the California Code of Judicial Ethics and constituted prejudicial misconduct.[2] (See Fletcher, supra, 19 Cal.4th at p. 878.)

Count One B

In August and September 2000, Judge Harris presided over a felony sexual assault trial in People v. Lopez, case No. BA196885. In the Lopez case, the defendant was charged with multiple counts of rape. The victim was an attorney identified as Jane Doe. Immediately after the sentencing hearing, without notifying defense counsel, Judge Harris initiated a meeting with the victim in chambers. During the meeting Judge Harris praised Ms. Doe for her bravery in testifying at trial, and told her that if there was anything he could do to help her in the future, she should call him. Judge Harris also invited Ms. Doe to have dinner with his family. When the victim later called Judge Harris to accept his invitation for dinner, Judge Harris suggested that instead of dining at his home, the two of them dine at a mutually convenient place. The victim later called to cancel the dinner.
Judge Harris concedes that he had an improper ex parte communication with the victim and that his conduct gave the appearance of impropriety and led to diminished esteem for the court. Once again, Judge Harris may have been motivated by compassion for the victim. But his ex parte invitation to a victim in a pending criminal proceeding to call him if there was anything he could do to help her could raise questions in the mind of an objective observer regarding the judge’s impartiality in the pending case. We conclude that Judge Harris’s conduct in meeting with a victim in a pending criminal action outside the presence of all counsel, even though the judge may have been acting in good faith, would nevertheless appear to an objective observer *CJP Supp. 70 to be unjudicial and prejudicial to public esteem for the judicial office. We conclude that Judge Harris’s conduct violated canon 2A of the California Code of Judicial Ethics and constituted prejudicial misconduct.

Count Two A

Deputy Public Defender Obe Ozobu was assigned to Judge Harris’s courtroom in 2002. In December of that year, while Ms. Ozobu was in the judge’s chambers, Judge Harris showed her a Macy’s department store advertisement and invited her to go to Macy’s with him to look at jackets. He said they could also have lunch together. Ms. Ozobu declined the judge’s invitation.
Ms. Ozobu did not testify at the hearing, and clear and convincing evidence supporting the allegations was not presented. The allegations of count two A were not established, and they are dismissed.

Count Two B

On January 28, 2003, Judge Harris was assigned to the Central Arraignment Courthouse to work temporarily in Division 82. Upon arriving at the courthouse, Judge Harris was greeted by Division Chief Bettina Rodriguez, who had just returned from a lunchtime workout and was wearing exercise clothes. When Ms. Rodriguez apologized for her attire, Judge Harris told her she looked okay. Judge Harris then placed his hands on Ms. Rodriguez’s face and said, “You’re so cute.” Judge Harris again encountered Ms. Rodriguez after she had changed into professional clothing and told her, “You looked okay then, you look even better now.”[3]
We conclude that Judge Harris’s conduct in putting his hands on Ms. Rodriguez’s face and saying “You’re so cute” violated canon 3B(4) of the California Code of Judicial Ethics,[4] and constituted improper action. We concur with the masters that Judge Harris’s other statements could be subject to differing interpretations; there is no clear and convincing evidence that the other statements, considered in context, violated the canons of judicial ethics, as alleged.

Count Two C

On February 4, 2003, Judge Harris presided over jury selection in People v. Sao, case No. 2CR10835, a case in which the defendant was alleged to have *CJP Supp. 71 followed, grabbed, and exposed himself to two young women. During jury selection, the deputy city attorney asked prospective jurors whether anyone had made a pass at them that made them uncomfortable. The attorney then directed a question to the prospective male jurors, asking, “Has there been a woman that made a pass at you and react [sic] in anger?” Judge Harris then stated, “Did some woman make a pass at you and get you angry? I’ve been waiting for that to happen to myself.”
Given the context of the proceeding, Judge Harris showed poor judgment in making the statement, and his comment also reflects a troubling pattern of insensitivity to women. Nonetheless, when count two C is viewed in isolation, we cannot conclude that there is clear and convincing evidence establishing violations of canons 1, 2A, 3B(4) or 3B(5) of the California Code of Judicial Ethics, as alleged. We concur with the masters that the allegations of count two C were not established by clear and convincing evidence, and they are dismissed.

Count Two D

In March 2003, Deputy Public Defender Glendy Ruiz appeared before Judge Harris for trial in People v. del Corral, case No. 3CR00003. Before trial began, there was a discussion in Judge Harris’s chambers regarding the possible disposition of the case. Judge Harris told Ms. Ruiz to talk to her client about a plea bargain. When Ms. Ruiz said her client wanted a jury trial, Judge Harris told her the guilty plea would only be a technicality and “doesn’t really matter.” When Ms. Rodriguez told the judge it did matter because her client was not guilty, Judge Harris responded, “The real reason is that [the defendant] wants to sit next to you for three days.”
We conclude that Judge Harris’s comments, in the context that they were made, could raise questions in the mind of an objective observer regarding the judge’s impartiality in the pending case. We further conclude that even though the judge may have been acting in good faith, his comments would nevertheless appear to an objective observer to be unjudicial and prejudicial to public esteem for the judicial office. Judge Harris’s conduct violated canon 2A of the California Code of Judicial Ethics, and constituted prejudicial misconduct.

Count Two E

Between October 2002 and April 2003, Judge Harris made inappropriate comments about defendants who appeared before him in criminal prostitution cases. In one case, a defendant who had a pelvic disorder appeared before the judge. After the defendant left the courtroom, Judge *CJP Supp. 72 Hams discussed her medical condition in open court and said “caveat emptor.” In another case, after the defendant left the courtroom, Judge Harris said to counsel in open court, “She would look okay if she had her teeth straightened.” In both instances the comments were made in the courtroom in the presence of numerous court staff and attorneys. We concur with the masters that Judge Harris’s remarks were undignified, violated canon 3B(4) of the California Code of Judicial Ethics, and constituted improper action.

Count Two F

In March 2003, Judge Harris presided over the jury trial in People v. Alvarez, case No. 3CR04253. Upon completion of jury selection, Judge Harris thanked counsel at sidebar for not exercising a challenge against a female juror because she was nice to look at.
We conclude that Judge Harris’s comment could raise questions in the mind of an objective observer regarding whether the judge might be motivated by personal interests during the case. We further conclude that even though the judge may have made the comment as a joke, and was acting in good faith, his comment would nevertheless appear to an objective observer to be unjudicial and prejudicial to public esteem for the judicial office. The conduct violated canons 1 and 2A of the California Code of Judicial Ethics,[5] and constituted prejudicial misconduct.

Count Two G

Deputy Alternate Public Defender Jean Costanza made a number of appearances in Judge Harris’s courtroom. In April 2003, Judge Harris complimented her on her good work and they discussed her background. Judge Harris said he enjoyed talking with her and that he would be happy to have lunch with her. Ms. Costanza replied that she would be in trial forever, but Judge Harris pressed her with further questions. Ms. Costanza declined lunch again, saying she “just ate peanuts,” to which Judge Harris replied that he could check with her boss to make sure she was in trial.
Even if Judge Harris’s intentions were completely innocent, as the masters found, his conduct in asking followup questions to probe her intentions placed Ms. Costanza in the awkward position of having to respond to the repeated personal questions of a judge in whose court she regularly appeared.
*CJP Supp. 73 Assistant Supervising Judge C. H. Rehm counseled Judge Harris in 2002 about meeting alone with young women lawyers, but rather than gleaning the larger lesson from that discussion, Judge Harris apparently took Judge Rehm literally, testifying that he did not consider Ms. Costanza to be a young attorney. Judge Harris’s tendency toward literal interpretation of comments made to him is troubling. The judge testified that he also interpreted Ms. Costanza’s comments literally and not as a sign of rejection, saying “I took her relatively literally that she was going to be in trial for the rest of her life.” While this sounds implausible, the masters were in the best position to evaluate the credibility of witnesses. Nonetheless, Judge Harris’s apparent tendency toward literal interpretation suggests that he did not fully grasp the import of what Judge Rehm was trying to tell him in 2002.
We conclude that in pressing an attorney who regularly appeared before him for a lunch appointment, Judge Harris failed to maintain and personally observe high standards of conduct so that the integrity of the judiciary would be preserved, in violation of canon 1 of the California Code of Judicial Ethics, and that his conduct constituted improper action.

Count Two H

On October 21, 2003, at the weapons screening area of the South Gate Courthouse, Judge Harris approached two female security officers. Judge Harris placed his hands against the wall and asked if they were going to search him. At the time, there were approximately 30 to 35 people in fine. Judge Harris then asked if he could choose who would search him, and said he wanted to be searched in chambers. This incident occurred after Judge Harris was counseled by Assistant Supervising Judge Rehm about his inappropriate conduct toward women.
Judge Harris’s conduct delayed others waiting for security clearance. We concur with the masters that it was inappropriate for Judge Harris to make fun of an event that the public is expected to take seriously, that Judge Harris’s conduct was not suitable for a judicial officer in a public setting, and that his conduct violated canon 3B(4) of the California Code of Judicial Ethics. We conclude that his conduct constituted improper action.

Count Three

The allegations of count three pertain to conduct by Judge Harris in his interactions with Deputy City Attorney Chadd Kim while she was in his courtroom for the cases People v. Castillo, case No. 2CR02465, and People v. Bolden, case No. 2CR13235, and for his actions in response to a Code of Civil Procedure section 170.6 challenge filed by Ms. Kim in People v. Bautista, case No. 2CR02345.
*CJP Supp. 74 On October 28, 2002, Ms. Kim appeared before Judge Harris for the first time in Castillo. When Ms. Km approached the bench to help the judge find the complaint in the court file, Judge Harris tossed the file toward her. The file came apart on the floor.
On February 5, 2003, Ms. Km appeared before Judge Harris in Bolden. Ms. Km indicated there would be a disposition involving the forfeiture of a large amount of seized cigarettes. Judge Harris asked, “Are you going to smoke them yourself?”
On February 20, 2003, Ms. Km appeared before Judge Harris in Bautista. After she filed a challenge to the judge under Code of Civil Procedure section 170.6, Judge Harris asked her to make a record of her reasons for filing the challenge. After Ms. Km explained her reasons, Judge Harris agreed to transfer the case to another department. However, while Ms. Km was still in the courtroom, Judge Harris said to the deputy city attorney in the next case, “Would you like to join your colleague in filing some paper?” Judge Harris added, “I didn’t toss any files at you or near you, did I?” When the attorney said “no,” Judge Harris responded, “No, I try to be selective when I throw things.”
Judge Harris said he now realizes that “[a]ny comment about any party, litigant, witness appearing in court should not be made by a judge, because the judge’s humor can be misinterpreted. It may not be funny to the observer and it might tend to embarrass somebody who is there.” Judge Harris also admitted that his actions in response to the Code of Civil Procedure section 170.6 challenge were inappropriate and that he “should have immediately acted upon the challenge without questioning her,” and that “an affidavit of prejudice should never be questioned and should be immediately transferred.”
We agree with Judge Harris. When he tossed the court file toward Ms. Km, asked her if she was going to smoke confiscated cigarettes, and said he was selective in throwing things at attorneys, he did not reflect a patient, dignified or courteous demeanor. Moreover, when Judge Harris pressed Ms. Km to prove up her Code of Civil Procedure section 170.6 challenge and questioned the other attorney about making a second challenge, an objective observer might have questioned whether Judge Harris had become personally embroiled in his interactions with Ms. Km. (See Fletcher, supra, 19 Cal.4th at pp. 902, 905-906, 917.) Judge Harris failed to maintain a high standard of conduct so that the integrity of the judiciary is preserved, and his actions did not promote public confidence in the integrity and impartiality of the judiciary. We conclude that Judge Harris’s conduct violated canons 1, 2A and 3B(4) of the California Code of Judicial Ethics, and constituted improper action.

*CJP Supp. 75
Count Four

In 2002 and 2003, Deputy City Attorney Matthew Schonbrun regularly appeared before Judge Harris. Mr. Schonbrun frequently went into Judge Harris’s chambers and they discussed Mr. Schonbrun’s social life. Mr. Schonbrun said he was having trouble meeting “nice Jewish girls.” Over the next several months, Judge Harris gave Mr. Schonbrun the telephone numbers of three different women. Mr. Schonbrun later reported to Judge Harris about the dates he had with the three women. Judge Harris also showed Mr. Schonbrun another woman’s business card and identification photo to see if Mr. Schonbrun would be interested in dating her. Notwithstanding his relationship with Mr. Schonbrun, Judge Harris did not disqualify himself from hearing Mr. Schonbrun’s cases. Further, while Judge Harris disclosed various social relationships with others, he did not disclose his relationship with Schonbrun because he felt it would have been embarrassing.
In his testimony before the masters, Judge Harris shared his newfound conviction that “it was not appropriate to get involved in [Mr. Schonbrun’s] social life.” He also averred that “[i]f I had a social relationship, if I had gone to school with an attorney, if I had friends appear, if I attended some bar association function or dinner or meeting or program, if there was an attorney who was from that association who I recognized, I would tell the other side my relationship and ask them if they’d like to go somewhere else or stay here.”
Canon 3E(2) of the California Code of Judicial Ethics provides that “a judge shall disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no actual basis for disqualification.” (Italics added.) Here, there is no clear and convincing evidence that Judge Harris believed the parties or the lawyers would consider the information relevant. Nonetheless, there is clear and convincing evidence that Judge Harris disclosed other social relationships he had with attorneys, but did not disclose this one because it would have embarrassed the attorney. As Judge Harris recognized, it was a mistake for him to find dates for an attorney regularly appearing in his court. Although there is no evidence of actual bias, we conclude that Judge Harris’s conduct in helping Mr. Schonbrun find dates could raise questions in the mind of an objective observer regarding the judge’s impartiality in cases handled by Mr. Schonbrun. We conclude that the judge’s conduct did not promote public confidence in the integrity and impartiality of the judiciary, in violation of canon 2A of the California Code of Judicial Ethics. We also conclude that his conduct would appear to an objective observer to be unjudicial and prejudicial to public esteem for the judicial office, and constituted prejudicial misconduct.

*CJP Supp. 76
Count Five

In his response dated October 3, 2003, to the Commission’s preliminary investigation letter, Judge Harris stated, “No Supervising Judge has ever spoken to me, counseled, criticized or reprimanded me concerning any of my conduct or behavior towards any person.” Contrary to this statement, on December 24, 2002, Judge Rehm, assistant supervising judge of the criminal courts, counseled Judge Harris after concerns were raised about his interactions with young, female attorneys. Further, on April 24, 2003, Judge Harris met with Presiding Judge Robert A. Dukes, Assistant Presiding Judge William McLaughlin, Supervising Judge Dan Oki and Judge Rehm and was advised of recent complaints asserting that he had persisted in asking female attorneys to lunch, and that he made comments about a court employee’s body.
Judge Harris’s response to the Commission therefore was false and misleading. Nonetheless, the masters concluded that Judge Harris inadvertently made a misstatement. While we would expect a judge to exercise greater care in preparing a response to the Commission’s preliminary investigation letter, we defer to the finding of the masters that this was an inadvertent error, as the masters were in the best position to evaluate the credibility of the witnesses. We conclude there is no clear and convincing evidence establishing a violation of canons 1 or 2A of the California Code of Judicial Ethics, or misconduct within the meaning of article VI, section 18, subdivision (d) of the California Constitution. The charge in count five is dismissed.
Recommended Level of Discipline
While it is not an exhaustive list, the Commission has identified five factors relevant to its determination of the appropriate level of discipline: (1) the number of acts of misconduct or improper action; (2) prior discipline against the judge; (3) evidence that the judge recognizes the inappropriateness of his or her actions; (4) the likelihood that the judge will continue to engage in misconduct or improper action; and (5) the impact of the judge’s conduct on the judicial system. (Inquiry Concerning Judge Van Voorhis (2003) No. 165, Decision and Order of Removal, p. 31 [48 Cal.4th CJP Supp. 257, 295].)
Applying the foregoing factors in order, we have concluded in this proceeding that Judge Harris engaged in five acts of prejudicial misconduct and five additional instances of improper action.[6] As for prior discipline, there is no record of prior discipline against the judge.
*CJP Supp. 77 As to whether the judge recognizes the inappropriateness of his actions, the record is mixed. In some instances the explanations given by the judge for his conduct suggest that he does not fully grasp the implications of his actions. In addition, the record indicates he continued such conduct even after Judge Rehm counseled him about it. In other instances, however, the judge quickly acknowledged that his conduct was inappropriate. The masters found that Judge Harris voluntarily took sensitivity training and that he learned a great deal from this counseling.
Regarding the chances for future misconduct, Judge Harris informed the Commission that he retired at the end of October 2004, and he made the following representation to the Commission: “I do not now, and I do not in the future, intend to apply for a seat assignment as a retired judge. I realize my career has concluded as a bench officer.” The Commission accepts this representation.
Nonetheless, the impact of the judge’s conduct on the judicial system was not insignificant. The conduct established in count one received media attention and the Court of Appeal issued a writ of habeas corpus vacating the sentence in the Tellez case. Judge Rehm felt compelled to counsel Judge Harris in 2002. In addition, there was a “flurry” of court activity devoted to addressing Judge Harris’s conduct in 2003, and Judge Dukes felt it necessary to write to the Commission and transfer Judge Harris to South Gate.
But there is also a great deal of evidence in mitigation. The masters repeatedly referenced the numerous witnesses who testified to the judge’s good nature and character, and also to his long, distinguished career as a judge.
Considering the totality of these circumstances, we conclude that a public admonishment is appropriate in this case. The factors discussed above, especially when considered in light of prior decisions, indicate that censure or removal are not called for here. (See, e.g., Inquiry Concerning Gibson (2000) No. 152 [48 Cal.4th CJP Supp. 112] [public admonishment]; Inquiry Concerning Willoughby (2000) No. 154 [48 Cal.4th CJP Supp. 145] [public censure].) Nonetheless, in light of the media attention surrounding Judge Harris’s conduct and the impact his conduct had on the judicial system, we conclude that a public, rather than private, admonishment is warranted.
This decision and order shall constitute the order of public admonishment of Judge Harris.
The following Commission members voted in favor of public admonishment: Justice Vance W. Raye, Judge Frederick P. Horn, Mr. Michael A. Kahn,
*CJP Supp. 78 Mrs. Crystal Lui, Ms. Patricia Miller, Mr. Jose C. Miramontes, Mrs. Penny Perez, Judge Rise Jones Pichón and Ms. Barbara Schraeger. There were no votes opposed.

 The notice of formal proceedings, which originally alleged that the judge’s meeting with the victim occurred after the sentencing hearing, was amended to allege that the meeting took place prior to the sentencing hearing.

 Canon 2A of the California Code of Judicial Ethics provides: “A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” (Fn. omitted.)

 Clear and convincing evidence was not submitted to support the allegation that Judge Harris stared at the derriere of Ms. Rodriguez.

 Canon 3B(4) of the California Code of Judicial Ethics provides in pertinent part: “A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity . . . .”

 Canon 1 of the California Code of Judicial Ethics provides in pertinent part that a judge “should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved.”

 Prejudicial misconduct was established in count one A, count one B, count two D, count two F and count four. Improper action was established in count two B, count two E, count two G, count two H and count three.