Filed 7/15/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| FLOYD CHODOSH, | C091221 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201800242031CUMCGDS) |
| v. | |
| COMMISSION ON JUDICIAL PERFORMANCE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David Brown, Judge. Affirmed.

Law Office of Patrick J. Evans and Patrick J. Evans for Plaintiff and Appellant.

Rob Bonta, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Anthony R. Hakl, and Jerry T. Yen, Deputy Attorneys General, for Defendants and Respondents.

Plaintiff Floyd Chodosh appeals from a judgment of dismissal entered in favor of defendants the Commission on Judicial Performance (the Commission), the Department of Justice, and former Attorney General Xavier Becerra (together with the Department of

1

Justice, the Attorney General; and with the Commission, defendants) after the trial court sustained defendants' demurrer to Chodosh's second amended complaint. Having carefully considered the record and the parties' arguments, we conclude Chodosh fails to state facts sufficient to constitute a cause of action against any defendant. Accordingly, we will affirm the judgment.

## I.  BACKGROUND

### A.    *The Parties and Other Relevant Persons*

Chodosh was a resident or owner of property in a senior-owned mobile home park. Prior to bringing the present action, Chodosh was one of several plaintiffs involved in litigation concerning the mobile home park in Orange County Superior Court.[1] The Honorable Robert J. Moss, Judge of the Orange County Superior Court, was assigned to the case.[2]

The Commission is an independent body within California's Judicial Branch, with constitutional authority to retire, remove, censure, or admonish a judge, and to disqualify a judge during the pendency of formal proceedings, subject to review by the California Supreme Court. (Cal. Const., art. VI, §§ 8, 18, subd. (d).)  The Commission is authorized to "investigate complaints of judicial misconduct and other conduct prejudicial to the administration of justice, to file formal charges, to hold adjudicative hearings and make findings, to order less serious discipline on its own authority, and to recommend the imposition of more serious discipline—including removal from office—" by the California Supreme Court. (*Adams v. Commission on Judicial Performance* (1994) 8 Cal.4th 630, 637 (*Adams*).)  The Commission is composed of 11 members, each

---

[1]  Dina Padilla was a plaintiff in the mobile home park litigation and a party to the trial court proceedings but is not a party to the present appeal.

[2]  Judge Moss is not a party to this action.

2

appointed to a four-year term: one justice of a court of appeal and two judges of superior courts appointed by the Supreme Court; two attorneys appointed by the Governor; and six citizens, two appointed by the Governor, two appointed by the Senate Committee on Rules and two appointed by the Speaker of the Assembly. (Cal. Const., art VI, § 8, subd. (a).)

The Attorney General is the "chief law officer of the State" and head of the Department of Justice. (Cal. Const., art. V, § 13; Gov. Code, § 12510; 9 Witkin, Cal. Procedure (6th ed. 2022) Administrative Proceedings, § 216.) The Attorney General has a duty to "see that the laws of the State are uniformly and adequately enforced." (Cal. Const., art. V, § 13; see also *State of California ex rel. Dept. of Rehabilitation v. Superior Court* (1982) 137 Cal.App.3d 282, 287 [interpreting Cal. Const., art. V, § 13 and concluding that, "this section of the Constitution imposes upon the Attorney General a discretionary duty to enforce the law"].)

B.     *Complaint to the Commission*

Chodosh submitted a complaint to the Commission in April 2016.[3] The complaint alleged Judge Moss committed judicial misconduct in the mobile home park case by reassuming jurisdiction over the case after being disqualified. The Commission acknowledged receipt of the complaint and requested additional information, which Chodosh provided. The Commission acknowledged receipt of the additional information in a letter dated July 26, 2016. The letter represented that the matter was "still under consideration." Chodosh alleges he heard nothing further from the Commission about

---

[3] The complaint was submitted in the form of a letter by Chodosh's counsel herein, on behalf of Chodosh and other plaintiffs in the mobile home park case. For convenience, we will refer to correspondence from Chodosh's counsel as correspondence from Chodosh.

3

the status of the complaint, leading him to conclude that no action was taken with respect to Judge Moss.

Chodosh then pressed his complaint to the Attorney General. In a letter dated February 11, 2017, Chodosh summarized the allegations against Judge Moss, enclosed a copy of a recently filed federal complaint against Moss and others, and urged the Attorney General to conduct his own investigation. (See *Eicherly v. O'Leary* (9th Cir. Jan. 3, 2018, No. 17-55446) 721 Fed.Appx. 625, 627-628 [affirming dismissal of federal claims against Judge Moss and others on *Rooker-Feldman* grounds and dismissal of remaining state law claims for lack of supplemental jurisdiction and remanding for entry of judgment].) The Attorney General responded by letter dated March 3, 2017. The letter stated, in pertinent part: "The Department of Justice is committed to upholding and enforcing state law, but it lacks the resources necessary to review all matters in which improper activities are alleged." The letter invited Chodosh to consider contacting the local district attorney's office.

Chodosh returned to the Commission, sending an additional round of letters in September 2017. The letters referred to a recently published report, in which the Commission purportedly represented that, "The Commission has on multiple occasions reported possible criminal conduct to prosecuting authorities."[4] Chodosh asked the Commission to provide data supporting the statement, including the year and number of referrals, and the agency or authority to which such referrals had been made. The Commission declined to provide the requested information. A similar letter to the Department of Justice yielded the same result.

---

[4] An excerpt of the report is attached as an exhibit to the second amended complaint. The report appears to have been prepared by the Commission and is entitled, "Report Concerning Adoption of Additions and Amendments to Rules of the Commission on Judicial Performance."

*C.    Trial Court Proceedings*

Chodosh commenced the instant action in October 2018.  The first and second amended complaints allege Judge Moss committed judicial misconduct by "fixing" the mobile home park case against Chodosh and the other plaintiffs thereto.  Chodosh expounds at length upon the alleged fix, which is said to have involved a conspiracy to obstruct justice (Pen. Code, § 182, subd. (a)(5)) and perjury (Pen. Code, § 118).  We need not address these allegations in any detail, as even Chodosh acknowledges that they are not essential to any cause of action against the Commission or Attorney General.

The first and second amended complaints allege the Commission and Attorney General systematically fail to discharge their ostensible duties to protect the public from "judge crime."[5]  Chodosh alleges the Attorney General refuses to investigate complaints about possible criminal conduct by judges, choosing instead to refer all such complaints to the Commission.  But the Commission, Chodosh says, operates behind a veil of secrecy, relying on rule 102(g) of the Rules of the Commission on Judicial Performance and policy 4.2 of the Policy Declarations of the Commission on Judicial Performance to protect judges and conceal their crimes from public view.[6]

---

[5]  Chodosh defines "judge crime" as "crime by a judge done from the bench by misuse of office and breach of duty and oath, as opposed to 'personal' crime such as judge conviction for [driving under the influence]."

[6]  Rule 102(g) of the Rules of the Commission on Judicial Performance, entitled "Disclosure of information to prosecuting authorities," provides:  "The commission may release to prosecuting authorities at any time information which reveals possible criminal conduct by the judge or former judge or by any other individual or entity."  Unless otherwise indicated, subsequent rule references are to the Rules of the Commission on Judicial Performance.

Policy 4.2, also entitled "Disclosure of information to prosecuting authorities," provides:  "When, in the course of evaluating complaints or conducting investigations, commission staff acquires information revealing possible criminal conduct by a judge, former judge or by any other individual or entity, such information shall be brought to the

5

Chodosh alleges the Commission's claim to have referred information concerning possible criminal conduct by judges to prosecuting authorities on "multiple occasions" is false. According to Chodosh, the Commission seldom, if ever, refers such information to prosecuting authorities and the Attorney General, for his part, has never prosecuted a judge. Instead, Chodosh asserts, the Commission spends time and money on trivial infractions, and works with the Attorney General to ensure that crime committing judges avoid prosecution. This, Chodosh says, constitutes an essential mission failure and waste of taxpayer funds by the Commission and Attorney General.

The first amended complaint asserts seven causes of action: (1) declaratory relief and request for an order directing the Commission to produce statistical information concerning referrals of possible criminal conduct by judges to prosecuting authorities pursuant to the public's constitutional right of access to governmental information (Cal. Const., art. I, § 3—first amended complaint's first cause of action); (2) declaratory relief seeking a determination that the Commission has a mandatory duty to report "judge crime" to prosecuting authorities (Cal. Const., art. VI, § 18, subd. (m)—first amended complaint's second cause of action); (3) a declaration that the Commission violates the separation of powers provision of the California Constitution (Cal. Const., art. III, § 3—first amended complaint's third cause of action); (4) a declaration that the Commission breached a duty to report evidence of possible criminal conduct by Judge Moss to prosecutors (Cal. Const., art. VI, § 18, subd. (m)—first amended complaint's fourth cause of action); (5) a common law taxpayer cause of action against the Commission (first amended complaint's fifth cause of action); (6) a common law taxpayer cause of action against the Attorney General (first amended complaint's sixth cause of action); and (7) a

attention of the commission at the earliest possible opportunity for consideration of a referral of the information to prosecuting authorities. Such a referral requires a vote of a majority of the commission members." All subsequent policy references are to the Policy Declarations of the Commission on Judicial Performance.

statutory taxpayer cause of action against defendants (Code Civ. Proc., § 526a—first amended complaint's seventh cause of action).

Defendants demurred to the first amended complaint, and the trial court sustained the demurrer to the causes of action seeking declaratory relief (the first amended complaint's first, second, third, and fourth causes of action) without leave to amend. The trial court sustained the demurrer to the taxpayer causes of action (the first amended complaint's fifth, sixth, and seventh causes of action) with leave to amend.

Chodosh filed a second amended complaint. The second amended complaint asserts four causes of action, styled as follows: (1) a statutory "taxpayer and citizen lawsuit" against the Commission (Code Civ. Proc., § 526a—second amended complaint's first cause of action); (2) a common law "taxpayer and citizen lawsuit" against the Commission (second amended complaint's second cause of action); (3) a statutory "taxpayer and citizen lawsuit" against the Attorney General (Code Civ. Proc., § 526a—second amended complaint's third cause of action); and (4) a common law "taxpayer and citizen lawsuit" against the Attorney General (second amended complaint's fourth cause of action).

Defendants demurred to the second amended complaint. The trial court sustained the demurrer without leave to amend and entered a judgment of dismissal in defendants' favor. This appeal timely followed.

## II. DISCUSSION

### A. *Standard of Review*

On appeal from a judgment based on an order sustaining a demurrer, we assume all the facts alleged in the complaint are true. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528.) We accept all properly pleaded material facts but not contentions, deductions, or conclusions of fact or law. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) We determine de novo whether the complaint alleges facts sufficient to state a cause of action under any legal theory. (*Committee for Green Foothills v. Santa*

7

*Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) "The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken.' " (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

B.      *Access to Information*

The first amended complaint's first cause of action seeks a declaration that Chodosh has a constitutional right of access to certain statistical information from the Commission. Specifically, the first amended complaint's first cause of action calls for the preparation and production of a series of charts reflecting an annual accounting, over a 21 year period, of: (1) the number of times a staff attorney brought information concerning possible criminal conduct by a judge to the attention of the Commission; (2) the number of times the Commission considered referring information concerning possible criminal conduct by a judge to prosecuting authorities; (3) the number of times the Commission conducted a vote to decide whether to refer information concerning possible criminal conduct by a judge to prosecuting authorities; and (4) the number of times the Commission actually decided, by a majority vote, to refer information concerning possible criminal conduct by a judge to prosecuting authorities. This information, Chodosh says, would disprove the Commission's alleged claim to have reported possible criminal conduct by judges to prosecutors on "multiple occasions." The trial court sustained the Commission's demurrer to the first amended complaint's first cause of action without leave to amend, ruling that Chodosh failed to allege facts showing he has a constitutional right of access to the requested information. We agree with the trial court.

The California Constitution provides a right of public access to certain information about governmental operations. (Cal. Const., art I, § 3, subd. (b)(1).) California voters passed Proposition 59 in 2004, which amended article I, section 3 of the California Constitution by adding subdivision (b). (Cal. Const., art I, § 3, subd. (b); *POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 750.) Subdivision (b)(1) states that

8

the "people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny."

Chodosh argues the Commission conducts the people's business with regard to the regulation of judges, and that business includes making appropriate referrals to prosecuting authorities. (See rule 102(g); policy 4.2.) Accordingly, Chodosh reasons that article I, section 3 of the California Constitution gives him a right of access to statistical information showing referrals of possible criminal conduct by judges to prosecuting authorities. We need not decide whether article I, section 3, subdivision (b) of the California Constitution gives the people a right of access to statistical information from the Commission generally, because we conclude Chodosh does not have a right of access to the specific information sought here.

Article I, section 3, subdivision (b)(5) of the California Constitution contains a savings clause which provides: "This subdivision does not repeal or nullify, expressly or by implication, any constitutional or statutory exception to the right of access to public records or meetings of public bodies that is in effect on the effective date of this subdivision . . . ." One such exception can be found in article VI, section 18, subdivisions (i) and (j) of the California Constitution, which was enacted by Proposition 190 in 1994, before the passage of Proposition 59. (See *Recorder v. Commission on Judicial Performance* (1999) 72 Cal.App.4th 258, 262-265 [discussing the passage of Proposition 190].)

Article VI, section 18, subdivision (i)(1) of the California Constitution authorizes the Commission to "make rules for the investigation of judges," including rules which "provide for the confidentiality of complaints to and investigations by the commission." The Commission's confidentiality rules are contained in rule 102. Rule 102(a) provides, with exceptions not relevant here, that "all papers filed with and proceedings before the commission shall be confidential." (See *Commission on Judicial Performance v.*

9

*Superior Court* (2007) 156 Cal.App.4th 617, 622 ["rule 102 provides that, except as stated in that rule, all nonpublic papers and proceedings are absolutely confidential"].)

"The confidentiality of the Commission's investigations is based on sound public policy.  Confidentiality encourages the filing of complaints and the willing participation of citizens and witnesses by providing protection against possible retaliation or recrimination.  It protects judges from injury which might result from the publication of unexamined and unwarranted complaints by disgruntled litigants or their attorneys, or by political adversaries, and preserves confidence in the judiciary as an institution by avoiding premature announcement of groundless claims of judicial misconduct or disability.  Confidentiality is essential to protecting the judge's constitutional right to a private admonishment if the circumstances so warrant, and when removal or retirement is justified by the charges, judges are more likely to resign or retire voluntarily without the necessity of a formal proceeding if the publicity that would accompany such a proceeding can thereby be avoided.  Leading writers have recognized that confidentiality of investigations and hearings by the Commission is essential to its success." (*Commission on Judicial Performance v. Superior Court, supra,* 156 Cal.App.4th at p. 622.)

The Commission's confidentiality rules change when disciplinary proceedings advance from the preliminary or investigative stages to formal proceedings.  Article VI, section 18, subdivision (i)(2) of the California Constitution authorizes the Commission to "make rules for formal proceedings against judges when there is cause to believe there is a disability or wrongdoing within the meaning of subdivision (d)."[7]  When the

_____

[7]  Article VI, section 18, subdivision (d) of the California Constitution provides in pertinent part:  "Except as provided in subdivision (f), the Commission on Judicial Performance may (1) retire a judge for disability that seriously interferes with the performance of the judge's duties and is or is likely to become permanent, or (2) censure a judge or former judge or remove a judge for action occurring not more than 6 years prior to the commencement of the judge's current term or of the former judge's last term that constitutes willful misconduct in office, persistent failure or inability to perform the

10

Commission commences formal proceedings, "the notice of charges, the answer, and all subsequent papers and proceedings shall be open to the public." (Cal. Const., art. VI, § 18, subd. (j); see also rule 102(b) ["Disclosure after institution of formal proceedings"].) Thus, article VI, section 18, subdivisions (i) and (j) of the California Constitution, as implemented by rule 102, contemplate that papers and proceedings brought *before* the commencement of formal disciplinary proceedings "shall be confidential," (rule 102(a)) while papers and proceedings brought *after* the commencement of such proceedings "shall be open to the public" (Cal. Const., art. VI, § 18, subds. (i) and (j)). (See also *Adams, supra,* 8 Cal.4th at p. 651 ["maintaining confidentiality *before the commencement of formal proceedings* involving judicial performance serves legitimate state interests by avoiding premature announcement of groundless claims of judicial misconduct"].)

The first amended complaint's first cause of action seeks statistical information reflecting *all* referrals of possible criminal conduct by judges, whether or not formal proceedings have been initiated. Chodosh argues the requested statistical information would not implicate the Commission's confidentiality rules, because the information "would reveal no names or detail, simply numbers." The Commission responds that the requested statistical information relates to actions taken and decisions made before the commencement of formal proceedings, and thus interferes with its confidentiality mandate. The Commission has the better argument.

"As a general rule, past or contemporaneous interpretation by an administrative entity of its constitutional authority, and of a constitutional provision it is charged with

---

judge's duties, habitual intemperance in the use of intoxicants or drugs, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute, or (3) publicly or privately admonish a judge or former judge found to have engaged in an improper action or dereliction of duty. The commission may also bar a former judge who has been censured from receiving an assignment, appointment, or reference of work from any California state court."

implementing, is accorded considerable weight [citation], and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized." (*Adams, supra,* 8 Cal.4th at pp. 657-658.) The first amended complaint does not allege facts supporting an inference that the Commission's interpretation of rule 102(a) was clearly erroneous or unauthorized.

Although the first amended complaint's first cause of action purports to seek only "numbers," Chodosh acknowledges those numbers are likely to be rather small, raising the possibility that the requested statistical information could be associated with specific judges, who might then be identified. Such an association and possible identification would be facilitated by the sequential nature of the requests, which seek annual statistics tracking the progress of investigations through the Commission's internal review process, from the time a staff attorney brings information concerning possible criminal conduct to the Commission's attention, to the time the Commission votes to refer the matter to prosecutors. These numbers would undoubtedly become smaller as investigations made their way through the preliminary stages (see generally rule 111), offering an increasingly detailed view of the Commission's deliberative process. The Commission could have concluded that the requests, as presented, would interfere with the confidentiality of the Commission's investigations. (Cal. Const., art. VI, § 18, subd. (i)(1); rule 102(a); see also *Recorder v. Commission on Judicial Performance, supra,* 72 Cal.App.4th at pp. 262, 282 [reviewing Cal. Const., art. VI, § 18, subds. (i) and (j) and concluding that Commission's deliberations and thought processes need not be disclosed to the public].)[8]

---

[8] We perceive another potential problem with the first amended complaint's first cause of action: Chodosh does not allege the information he seeks currently exists in the form in which he seeks it. To the contrary, the first amended complaint's first cause of action appears to call for the creation of new records, which would present the requested information in a particular format. Specifically, the first amended complaint's first cause of action seeks an order compelling the Commission to respond to written "interrogatories" by populating fields of data within a series of tables reflecting referrals

12

Nothing in the first amended complaint supports an inference that such a conclusion would have been clearly erroneous or unauthorized. The trial court properly sustained the demurrer to the first amended complaint's first cause of action.

*C.* *Duty to Report "Judge Crime"*

The first amended complaint's second cause of action seeks a declaration that the Commission has a mandatory constitutional duty to report "judge crime" to prosecuting authorities. The first amended complaint's fourth cause of action seeks a declaration that the Commission breached that duty by failing to report Judge Moss. The trial court sustained the demurrer to both causes of action on the ground that no authority supports the existence of such a duty. Once again, we agree with the trial court.

Chodosh argues support for the existence of a mandatory duty to report information concerning possible criminal conduct by judges can be found in a series of authorities, beginning with article VI, section 18, subdivision (m) of the California Constitution. Subdivision (m) provides: "The Supreme Court shall make rules for the conduct of judges, both on and off the bench, and for judicial candidates in the conduct of their campaigns. These rules shall be referred to as the Code of Judicial Ethics." (Cal. Const., art. VI, § 18, subd. (m).) Chodosh does not suggest that subdivision (m), alone, imposes a duty to report "judge crime." Instead, he directs our attention to canon 3D(1) of the California Code of Judicial Ethics (canon 3D(1)), which he says stands for the principle that a "judge that is aware of another judge that is or may be committing crimes

---

and contemplated referrals to prosecutors. The first amended complaint does not allege the Commission maintains the requested information in the requested format, and Chodosh does not offer any authority to support the argument that the public's right of access to information includes a right to require a governmental agency to create new records to satisfy a request. (Cf. *Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 665-666 [State Bar was not under a duty to create new records in response to request for information under the California Public Records Act (Gov. Code § 6250 et seq.)].) The Commission does not raise this issue, however, so we mention it only in passing.

must report such possible judge crime to prosecuting authorities."[9]  We disagree with this construction of the rule.

Canon 3D(1) provides:  "Whenever a judge has reliable information that another judge has violated any provision of the Code of Judicial Ethics, that judge shall take appropriate corrective action, which may include reporting the violation to the appropriate authority."  Chodosh argues canon 3D(1) has the force of law by virtue of article VI, section 18, subdivision (m) of the California Constitution, and imposes a mandatory duty on the Commission (or at least the three judicial members of the Commission) to report "judge crime."  We are not convinced.

By its terms, canon 3D(1) is concerned with reporting by judges of potential violations of the California Code of Judicial Ethics, not the Penal Code.  The California Code of Judicial Ethics sets forth the standards of conduct to which judges are held.  (*Adams, supra,* 8 Cal.4th at pp. 661.)  These standards are described, in part, in the canons, which "do not have the force of law or regulation," but " 'reflect a judicial consensus regarding appropriate behavior' for California judges."  (*Id.* at pp. 661-662; *Fletcher v. Commission on Judicial Performance* (1998) 19 Cal.4th 865, 883, fn. 5 [same]; and see e.g., Cal. Code of Jud. Ethics, canon 3B(4) ["A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity"].)  "The failure of a judge to comply with the canons 'suggests performance below the minimum level necessary to maintain public confidence in the administration of justice.' "  (*Adams, supra,* at p. 662.)  The California Code of

---

[9]  The first set of judicial canons was adopted in 1949 by the Conference of California Judges (now the California Judges Association).  (See Cal. Code of Jud. Ethics, preface.)  The canons, then called the Code of Judicial Conduct, were modified from time to time until 1995, when article VI, section 18, subdivision (m) was added to the California Constitution.  (Cal. Code of Jud. Ethics, preface.)  The Supreme Court adopted the Code of Judicial Conduct on an interim basis in 1992, and formally adopted the Code of Judicial Ethics in 1996.  (*Ibid.*)

14

Judicial Ethics does not specifically address criminal conduct by judges, other than to say that, "Nothing in the code shall . . . provide a separate basis for civil liability or criminal prosecution." (Cal. Code of Jud. Ethics, preamble.)

We agree with the authorities that have concluded canon 3D(1) does not have the force of law. (*Adams, supra,* 8 Cal.4th at pp. 661-662; *Fletcher v. Commission on Judicial Performance, supra,* 19 Cal.4th at p. 883, fn. 5.)[10] We are not persuaded that canon 3D(1) applies to the Commission as an entity, in contrast to the individual judges serving as members of the Commission. (Cal. Const., art VI, § 8, subd. (a).) We also question whether canon 3D(1) applies to violations of the Penal Code, given that the plain text references only violations of the California Code of Judicial Ethics.[11] Nevertheless, we will assume without deciding that each of these premises are true. Even so assuming, we see no basis for concluding that canon 3D(1) imposes a mandatory duty to report information concerning possible "judge crime" in all circumstances, as Chodosh would have us do.

Canon 3D(1) imposes an obligation on judges to "take appropriate corrective action" with respect to "reliable information that another judge has violated any provision of the [California] Code of Judicial Ethics." This does not require reporting in all

---

[10] Chodosh attempts to distinguish *Adams, supra,* 8 Cal.4th 360 and *Fletcher v. Commission on Judicial Performance, supra,* 19 Cal.4th 865 on the ground that neither case considered the California Code of Judicial Ethics mandated by article VI, section 18, subdivision (m) of the California Constitution. According to Chodosh, article VI, section 18, subdivision (m) of the California Constitution elevates canon 3D(1) to a constitutional requirement. We disagree, but we need not closely examine the argument, as we conclude canon 3D(1) is not reasonably susceptible to Chodosh's interpretation.

[11] We acknowledge, however, that the conduct underlying some violations of the California Code of Judicial Ethics could also constitute violations of state or federal criminal laws. (See, e.g., *Danser v. Public Employees' Retirement System* (2015) 240 Cal.App.4th 885, 887 [discussing conviction of superior court judge for conspiracy to obstruct justice].)

15

circumstances. Rather, canon 3D(1) specifies that "appropriate corrective action . . . *may include* reporting the violation to the appropriate authority."[12] (Italics added.) By definition, "appropriate corrective action" may sometimes involve some other response. (*Ibid.*) Whether and where to report the violation is left to the discretion of individual judges.

That canon 3D(1) requires judges to exercise judgment seems clear from the text of the rule. Any doubts on this score are set to rest by the Advisory Committee commentary, which states: "Appropriate corrective action could include direct communication with the judge . . . who has committed the violation, writing about the misconduct in a judicial decision, or other direct action, such as a confidential referral to a judicial or lawyer assistance program, or a report of the violation to the presiding judge, appropriate authority, or other agency or body." (Advisory Com. commentary, foll. canon 3D(1), italics omitted.) As one treatise explains: "This commentary makes it clear that judgment is required as to the level of corrective action, which should involve weighing factors such as the nature of the violation, the amenability of the judge who committed the violation to correcting his or her behavior, and whether it is an isolated incident or represents a pattern of behavior." (Rothman, et al., California Judicial Conduct Handbook (4th ed. 2017) § 5:65, p. 323 (Handbook).) Canon 3D(1) does not specifically address information concerning possible criminal conduct by judges and does

_____

[12] The Advisory Committee commentary to canon 3D(1) explains: " 'Appropriate authority' means the authority with responsibility for initiation of the disciplinary process with respect to a violation to be reported." (Advisory Com. commentary, foll. canon 3D(1).) This definition, which focuses on disciplinary action rather than penal sanctions, suggests that canon 3D(1) is concerned with violations of the California Code of Judicial Ethics, rather than possible violations of the Penal Code.

not impose an affirmative obligation on judges to report such information to prosecutors.[13]

Though canon 3D(1) may be silent on the subject of possible criminal conduct by judges, policy 4.2 and rule 102(g) are not. Policy 4.2 requires members of the Commission to consider information concerning possible criminal conduct by a judge, and determine, by a majority vote, whether the information should be referred to prosecutors. Rule 102(g) provides that the Commission "*may* release to prosecuting authorities at any time information which reveals possible criminal conduct by the judge or former judge or by any other individual or entity." (Italics added.) Together, policy

---

[13] Chodosh cites an earlier edition of the Handbook, which says: "In cases in which a judge has reliable information that another judge has committed a serious criminal offense, the conduct must be reported to the appropriate authority that would include not only the Commission on Judicial Performance, but the appropriate law enforcement agency." (Rothman, et al., California Judicial Conduct Handbook (2d ed. 1999) § 5.65, p. 153 (1999 Handbook).) According to Chodosh, the 1999 Handbook recommends that violations be reported to *both* the Commission *and* "the appropriate law enforcement agency." (Emphasis omitted.) But the 1999 Handbook could also be understood to recommend that violations be reported to an "appropriate authority," which could include *either* the Commission *or* "the appropriate law enforcement agency." After all, the 1999 Handbook does not recommend reporting violations to the "appropriate authorities." We need not linger over this question, however, as the recommendation does not appear in any subsequent edition of the Handbook.

Chodosh also directs our attention to a November 10, 2006 memorandum from the Judicial Council of California to presiding judges of the superior courts. The memorandum includes illustrations of corrective actions drawn from the 1999 Handbook and other sources. The memorandum refers to the above-quoted language from the 1999 Handbook, but notes: "It is important to bear in mind that people may differ in their view of what constitutes appropriate corrective action, and the [Commission] may not agree with the actions recommended below by . . . Judge Rothman."

The 1999 Handbook and memorandum are not binding and do not support the existence of a mandatory constitutional duty to report information concerning possible criminal conduct by a judge to prosecutors.

17

4.2 and rule 102(g) confirm that the decision to report information concerning possible criminal conduct by a judge rests in the discretion of the Commission.

Chodosh argues policy 4.2 and rule 102(g) are unconstitutional, because they authorize an exercise of discretion that canon 3D(1) forecloses. This argument rests on the premise that canon 3D(1) imposes a mandatory reporting obligation, which we have already rejected.

Canon 3D(1) does not impose an affirmative obligation on judges to report any and all information concerning possible criminal conduct by another judge to prosecuting authorities, but rather, imposes an obligation to take "appropriate corrective action, which *may include* reporting the violation to the appropriate authority." (Canon 3D(1), italics added.) For this reason, the first amended complaint fails to allege facts showing that the Commission (or any member of the Commission) owed or breached a duty to report information concerning possible criminal conduct by Judge Moss to prosecutors. The trial court properly sustained the demurrer to the first amended complaint's second and fourth causes of action.

D.     *Separation of Powers*

The first amended complaint's third cause of action alleges the Commission violates separation of powers principles by exercising power delegated to the Attorney General.[14] Specifically, the first amended complaint's third cause of action alleges the Commission usurps the Attorney General's prosecutorial authority by receiving complaints about possible criminal conduct by judges from the public, and exercising discretion as to whether information gathered in the course of investigating such

---

[14] The opening brief argues the Attorney General violates separation of powers principles by abdicating his or her responsibility to prosecute "judge crime." However, the first amended complaint asserts the third cause of action for violating separation of powers principles against the Commission only. No such cause of action is alleged against the Attorney General.

18

complaints should be referred to prosecuting authorities. The third cause of action seeks a declaration that the Commission violates separation of powers principles by exercising power delegated to the Attorney General to decide whether information concerning possible criminal conduct by judges should be criminally investigated and prosecuted.[15] The trial court properly sustained the demurrer to the third cause of action.

Article III, section 3 of the California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others *except as permitted by this Constitution*." (Italics added.) The Commission was created by constitutional amendment (Cal. Const., art. VI, § 8), and has authority to "investigate complaints of judicial misconduct, a judge's failure or inability to perform the duties of a judge, and other conduct prejudicial to the administration of justice." (*Mosk v. Superior Court* (1979) 25 Cal.3d 474, 489-490.) However, the Commission has no right or duty to prosecute any public offense. (*McComb v. Superior Court* (1977) 68 Cal.App.3d 89, 97 ["The commission has no authority to prosecute or punish a person charged with a public offense; the power of the commission extends no further than to *recommend* to the Supreme Court the removal or retirement of a judge who is the subject of a proceeding under article VI, section 18 of the Constitution"].) Rather, "[t]he prosecution of criminal offenses on behalf of the People is the sole responsibility of the public prosecutor." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 451; see also Govt. Code, § 26500 ["The district attorney is the public prosecutor, except as otherwise provided by law. The public prosecutor shall attend the courts, and within his or her discretion shall initiate and conduct on behalf of the people all

---

[15] The third cause of action also seeks a declaration that the Commission "cannot decide to <u>not</u> report but rather must and shall, at all times and without exception, report evidence of possible judge crime to the executive branch." We have already considered and rejected this contention.

19

prosecutions for public offenses"]; Cal. Const., art. V, § 13 ["When required by the public interest or directed by the Governor, the Attorney General shall assist any district attorney in the discharge of the duties of that office"].)

Chodosh contends the Commission usurps the Attorney General's prosecutorial authority by acting as a repository for complaints alleging criminal conduct by judges.[16] Chodosh further contends the Attorney General abdicates his prosecutorial duty and acquiesces in the alleged usurpation of authority by the Commission, by telling members of the public to direct such complaints to the Commission, rather than investigating them himself. These arguments lack merit.

The Attorney General's purported policy of directing complaints to the Commission does not support an inference that the Commission exercises prosecutorial authority with respect to any alleged criminal conduct by judges. The Commission has authority to investigate judges and exercise discretion in deciding whether information concerning possible criminal conduct by judges should be referred to prosecuting authorities. (*Mosk v. Superior Court, supra,* 25 Cal.3d at pp. 489-490; see also rule 102(g); policy 4.2.) However, the exercise of discretion in deciding whether to refer information to prosecuting authorities is not the exercise of prosecutorial discretion or authority. Nothing in the first amended complaint suggests the Commission prosecutes crimes for the Attorney General or decides for the Attorney General whether information referred by the Commission should be prosecuted. The trial court properly sustained the demurrer to the third cause of action. (See *Adams, supra,* 8 Cal.4th at p. 649

---

[16] The first amended complaint alleges the Attorney General directs *all* such complaints to the Commission, including complaints alleging noncriminal misconduct by judges. We note the complaint to the Commission here alleges noncriminal conduct by Judge Moss.

20

[Commission's exercise of authority granted by California Constitution does not contravene separation of powers].)

E.      *Taxpayer Causes of Action*

The second amended complaint asserts four causes of action against the Commission and Attorney General, each styled as a "taxpayer and citizen lawsuit" under Code of Civil Procedure section 526a or the common law.  The second amended complaint's first and second causes of action seek declarations that the Commission does not discharge its duty to protect the public from judicial corruption but relies on rule 102(g) and policy 4.2 to suppress information concerning possible criminal conduct by judges and shield crime committing judges from prosecution, all at taxpayer expense.  The second amended complaint's third and fourth causes of action seek declarations that the Attorney General has a mandatory duty to enforce California law against crime-committing judges and allocate resources to the investigation and prosecution of "judge crime."  The trial court sustained the demurrer to the taxpayer causes of action on the ground that the second amended complaint fails to allege facts establishing the existence of a mandatory duty requiring the Commission to refer information concerning possible criminal conduct by judges to prosecuting authorities.  We perceive no error.

"A taxpayer may bring suit against government bodies pursuant to Code of Civil Procedure section 526a and based on common law." (*California Taxpayers Action Network v. Taber Construction, Inc.* (2017) 12 Cal.App.5th 115, 141.)  Code of Civil Procedure section 526a authorizes "[a]n action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency, . . . against any officer thereof, or any agent, or other person, acting in its behalf." (Code Civ. Proc., § 526a, subd. (a).)  Common law taxpayer suits are limited to the " 'grounds [of] fraud, collusion, *ultra vires*, or a failure to perform a duty specifically enjoined.' " (*California Taxpayers Action Network v. Taber Construction, Inc., supra,* at p. 141.)  "Nevertheless, under either Code of Civil Procedure

21

section 526a or the common law, '[t]axpayer suits are authorized only if the government body has a duty to act and has refused to do so. If it has discretion and chooses not to act, the courts may not interfere with that decision.' " (*San Bernardino County v. Superior Court* (2015) 239 Cal.App.4th 679, 686; see also *Elliott v. Superior Court* (1960) 180 Cal.App.2d 894, 897 ["If a taxpayer could sue on behalf of the state, or one of its agencies, for a cause of action which the state or the agency has refused to assert on a matter within its discretion, the discretion to act would no longer reside in the executive or administrative official but in the taxpayers"].)[17]

Chodosh argues the trial court erred in sustaining the demurrer to the second amended complaint's first cause of action, the statutory "taxpayer and citizen" cause of action against the Commission. He sounds a now familiar refrain, arguing the Commission "has a mandatory duty to refer judge crime to prosecutors." We have already rejected this argument. To reiterate, rule 102(g) and policy 4.2 authorize the Commission to exercise discretion in deciding whether to report information concerning possible criminal conduct by judges to prosecutors. Canon 3D(1) does not change this conclusion, and the second amended complaint does not suggest any other basis for imposing a mandatory duty on the Commission. The trial court properly sustained the demurrer to the second amended complaint's first cause of action.

Chodosh argues the trial court erred in sustaining the demurrer to the second amended complaint's second cause of action, the common law taxpayer cause of action against the Commission. He argues the trial court ignored allegations that the Commission colludes with the Attorney General to suppress information concerning

---

[17] Chodosh does not raise any specific arguments concerning the second amended complaint's "citizen" and "waste" allegations in the opening brief. He touches on these themes in the reply brief, but we do not consider arguments raised for the first time in a reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

22

possible criminal conduct by judges, falsely claims to have reported such information to prosecuting authorities on "multiple occasions," and acts ultra vires by serving as the sole authority for "judge crime." The trial court's ruling belies this contention. The ruling makes clear that the trial court considered the allegations but found them to be "conclusory and insufficient." Chodosh does not address the trial court's reasoning (other than to say it was wrong) and does not attempt to show the allegations of fraud, collusion, and ultra vires acts were sufficient. We decline to make such arguments for him.

Chodosh perfunctorily argues the trial court erred in sustaining the demurrer to the second amended complaint's third and fourth causes of action, the statutory and common law taxpayer causes of action against the Attorney General. With respect to both causes of action, Chodosh argues, without citation to any authority, that the Attorney General has a mandatory duty to investigate and prosecute "judge crime." The trial court rejected this argument, stating: "The Constitution provides the Attorney General with the discretion to enforce the law." (*State of California ex rel. Dept. of Rehabilitation v. Superior Court, supra,* 137 Cal.App.3d at p. 287 [article V, section 13 of the California Constitution "imposes upon the Attorney General a discretionary duty to enforce the law"].) Chodosh does not make any effort to explain why the trial court's reasoning was incorrect. Again, we decline to develop such arguments for him.

*F.     Leave to Amend*

When a trial court has sustained a demurrer without leave to amend, the plaintiff has the burden of proving how an amendment would cure the defect. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) Chodosh does not address or request leave to amend in his appellate briefs, and does not attempt to show how any cause of action might be rehabilitated. He has therefore forfeited the issue and we need not consider whether the trial court abused its discretion in sustaining the demurrers without leave to amend. (*Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 369; see also

23

*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44 ["Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend"].)

## III.  DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/S/

_____

RENNER, J.


We concur:


/S/

_____

DUARTE, Acting P.J.


/S/

_____

KRAUSE, J.